HALL, Judge
The plaintiffs in these 10 consolidated suits sued the State of Louisiana through the Department of Transportation and Development, the Department’s contractor, Louisiana Paving Company, and the contractor’s liability insurer, Highland Insurance Company, for property damages and mental anguish damages allegedly caused by defendants’ blasting operations in the course of demolishing an overpass. The defendants denied liability and the State filed third-party demands against the contractor. The third-party demands were severed from the trial of the principal actions, have not been decided, and are not before the court on these appeals.
After trial, pursuant to written reasons for judgment in which the trial court found that the blasting operation caused substantial damages to plaintiffs’ houses and buildings, judgments were rendered in favor of each plaintiff against the defendants in sol-ido.[1] The defendants appealed, specifying *1172 as error the trial court’s findings that the established defects in plaintiffs’ structures were caused by the blasting operation and the court’s assessment of damages. The plaintiffs answered the appeals seeking an increase in the amount of damages awarded.
Our review of the record discloses that the trial court’s findings of fact on causation and damages are supported by substantial evidence in the record and are not clearly wrong or manifestly erroneous. Accordingly, the judgments are affirmed.
Plaintiffs are the owners of residences, rental dwellings, and a commercial building located within 230 feet to 1525 feet from the overpass in Jonesboro, Louisiana which was the subject of the demolition operation. On May 10, 1976, pursuant to its contract with the state, which included within its scope the demolition of the overpass, Louisiana Paving Company proceeded to demolish the structure by blasting with an explosive known as “C4”. There were three separate blasts, the first or test blast at about 9:30 in the morning using three pounds of explosive, a second blast at about 1:30 in the afternoon using 12 pounds of explosive, and a third blast at about 3:30 in the afternoon using Impounds of explosive. The second and third blasts were utilized to fell the vents and pilings underneath the bridge.
Several plaintiffs testified that they were at home when the blasting took place during the afternoon. The essence of their collective testimony is that the shock of the blast was dramatic, shaking their houses, cracking or breaking some windows, blowing open the doors of the houses, causing pictures to fall off the wall, breaking china inside the houses, and the like. The plaintiffs testified that prior to the explosions their structures were in good or excellent condition and after the blasting there were apparent significant damages to the structures in the nature of cracked exterior walls, separation of partitions, cracks in the foundations and floors, doors out of alignment, and the like, all of which damages became worse during the intervening time between the explosions and the trial of these cases several years later.
Plaintiffs offered the testimony of a civil engineer from Dallas with good credentials. The engineer made an extensive examination of all of the structures, verified the extent of damages to each one and at trial expressed the firm conclusion that the damages were caused by the blasting operations. His opinion was based primarily on the nature of the damages which he believed were caused by airborne shock and were not caused by settling or shifting of the soil, and on the fact that the damages were not present prior to the blasting operation. The engineer conceded that the force generated by the amount of explosives used would not have ordinarily caused the damages but was of the opinion the force was magnified by some process such as refraction or other unusual phenomenon which could not be scientifically explained absent knowledge of all factors which existed at the time of the blasting. According to the expert, the force of the shock hit the structures, moved them on their foundations and they rebounded, causing the structural damages.
Two construction experts testified for the plaintiffs. They described in detail the various defects in the structures and the cost of repairing or replacing them. In several instances the damage was so extensive that repairs were impossible or the cost of repairs would have exceeded the cost of replacing the structures.
The defendants presented a strong defense based on the testimony of four well-qualified experts, a geologist and three engineers. One of the engineers examined the structures and was of the opinion the defects were the result of shrinking, expansion, and shifting of the soil beneath the foundations of the structures. The other experts, using various scientific approaches, were of the opinion that the amount of explosives used in the blasting operation could not have caused the structural damages complained of.
The defendants also presented the testimony of several persons who observed the *1173 blasting operation from close by and who testified there was nothing unusual about the operation that caused them to be concerned about damage to nearby property.
The trial court noted that it was impressed by the expert testimony, but also noted that it was contradictory and offsetting. The court found the testimony of the plaintiffs to be credible and, in finding causation, relied heavily on their description of the blast and the existence of damage to the structures after the explosions that did not exist before the explosions.
On appeal the defendants emphasize the credentials and methods of their expert witnesses and their conclusions as to the improbability or impossibility of the explosions having caused the damage to plaintiffs’ property. They point out the lack of extensive glass breakage, glass being the weakest part of structures, as indicating the shock force was not great enough to have caused the structural damage complained of. Also emphasized is the fact that other structures in the area were not damaged to the same extent. Defendants argue that the defects in plaintiffs’ property were the result of settlement and shifting of the soil and that the defects preexisted the blasting operations but were only noticed after plaintiffs made critical examinations of their property following the blasting. Defendants argue that the plaintiffs’ interest in the outcome of the cases should be considered in evaluating their testimony. It is argued that the opinion of plaintiffs’ expert was not based on any reliable scientific theory and that defendants’ expert evidence showed no unusual effects such as a refraction could have occurred within the “near field” of the explosions.
Defendants contend specifically that the trial court erred in applying a preponderance of the evidence standard of proof, arguing that this is a circumstantial evidence case and that plaintiffs are required to make out their case by convincing evidence, excluding every other reasonable hypothesis of causation of the damage to their structures.
There is substantial direct eyewitness evidence as to the blasting operation, how it was conducted, and its immediate effect. Plaintiffs did not rely primarily on circumstantial evidence to prove their case, but relied on direct evidence of the events that occurred. Causation often must be inferred from the proven circumstances, but that does not make every case where causation is at issue a circumstantial evidence case requiring a standard of proof greater than a preponderance of the evidence. In this case the trial court properly applied the preponderance of evidence — more probable than not — standard of proof. See Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845 (1955).
The testimony of each of the several plaintiffs tends to corroborate that of the others. This testimony was corroborated by at least one witness in the neighborhood whose home was damaged but who chose not to bring suit. The nature of the damages to the structures was corroborated by the two construction experts. The opinion of plaintiffs’ civil engineer expert was formed after extensive examination of the structures and is entitled to weight. As noted by the trial court, acceptance of the opinions of the defendants’ expert witnesses as to the minimal effect of the blasting would almost necessarily require a finding that plaintiffs’ testimony concerning the considerable shock accompanying the explosions was untrue, a conclusion not warranted by the record.
We conclude after careful review of the voluminous record that the trial court’s credibility evaluations and resolution of the factual issue of causation in plaintiffs’ favor is supported by the evidence and is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
In assessing damages the trial court relied on the evidence of cost to repair and cost of replacement presented by the two building contractors who testified for the plaintiffs. In most instances the court awarded the cost of replacing the damaged structures, based on 1976 cost, less depreciation, there being evidence that the property could not be repaired or that the cost of *1174 repair would exceed the replacement cost of the damaged property, and there being no evidence of the difference in value of the properties before and after the damage. In one instance the court awarded the cost to repair. The trial court’s approach to calculating damages is consistent with the methods recognized in prior cases such ás Roshong v. Travelers Insurance Company, 281 So.2d 785 (La.App. 3d Cir.1973).
While defendants complain that the awards are excessive and that the properties could have been repaired at lesser cost as testified to generally by one of their expert witnesses, no specific cost figures were presented in the defendants’ evidence and no alternative calculation of damages is presented for this court’s consideration.
An appellate court can disturb an award of damages made by a trial court only where the record clearly reveals that the trier of fact abused its discretion in making the award. Reck v. Stevens, 373 So.2d 498 (La.1979). On the basis of the evidence presented in these cases we find the trial court did not abuse its discretion in determining the amount of damages awarded. The awards are neither excessive as argued by defendants, nor inadequate as argued by plaintiffs.
For the reasons expressed, the judgments of the district court are affirmed, at the cost of defendants-appellants.
Affirmed.

. The amounts awarded in each case were as follows, with the first figure representing property damage and the second figure representing mental anguish and inconvenience damages:
Amount Awarded
NO. 15,429-CA Greer $32,900.00 4,000.00
NO. 15,430-CA Garris $61,500.00 3,000.00
NO. 15,431-CA Thrasher $31,644.00 3,000.00
NO. 15,432-CA Lawrence $25,000.00 1,000.00
NO. 15,433-CA Allen $36,940.67 1,500.00
NO. 15,434-CA Wainwright $75,000.00 1,500.00
NO. 15,435-CA Wainwright $25,000.00 .00
NO. 15,436-CA Trahan $ 8,400.00 1,500.00
NO. 15,437-CA Wyatt $27,320.62 1,500.00
NO. 15,438-CA Gibbs $50,000.00 3,000.00