453 So.2d 949 (1984)
Roy GIROIR, Individually and as Administrator of the Estate of Earline Giroir, et al.
v.
SOUTH LOUISIANA MEDICAL CENTER, et al.
No. 83 CA 0773.
Court of Appeal of Louisiana, First Circuit.
May 30, 1984.
Rehearing Denied June 29, 1984.
Writs Granted October 12, 1984.
*951 Michael J. Samanie, Houma, for plaintiffs and appellees.
Dale C. Martin, Lippman, Mahfouz, Martin, Larocca & Stansburg, Morgan City, for defendants and appellants.
Before COVINGTON, COLE and SAVOIE, JJ.
COLE, Judge.
The main issue in this case is whether or not a suit filed timely by one plaintiff in wrongful death and survival actions interrupts prescription as to other plaintiffs asserting similar but distinct claims arising out of the same factual circumstances.

FACTS
Mrs. Earline Giroir, age 54, began experiencing abdominal pain, nausea and vomiting in the early part of 1979. She sought treatment at South Louisiana Medical Center (SLMC) in Houma, Louisiana, in March of that year. From March to October she visited the clinic approximately 14 times, both as an inpatient and as an outpatient. A series of tests (upper GI series, x-rays, gall bladder tests, arteriogram and others) was performed, but none suggested the cause of her problems. At one point one of her physicians, Dr. Kieran Key, suggested her illness might be "functional" in nature, i.e., caused by mental or emotional problems.
Mrs. Giroir continued to suffer from abdominal pain, nausea, and vomiting, and in August of 1979 complained of an additional malady: severe diarrhea. She visited SLMC three or four more times during the period from October 1979 to February 1980, when a gall bladder test done in February indicated a possible problem. She underwent gall bladder surgery that month but the pathology report indicated no serious gall bladder abnormalities. She was discharged from SLMC on March 2, 1980 but was readmitted two days later due to continuous pain, nausea and diarrhea. Her condition worsened steadily and on March 13 she went into shock. Emergency surgery was performed and her condition was at last diagnosed as arterial thrombosis of the superior mesenteric artery. (In laymen's terms this means a blood clot of the artery found in the peritoneal fold attaching the small intestine to the dorsal body wall.) This condition had caused the "death" of her small intestines and a portion of her large intestines. A by-pass surgery was performed at that time and she underwent two "second look" operations within the next few days. Mrs. Giroir died on March 20, 1980.

PROCEDURE
The decedent's husband, Roy Giroir, filed suit on March 13, 1981 against Drs. David *952 Makey, E. Helm, and I. Bankston, as well as SLMC (through the State of Louisiana, Louisiana Health and Human Resources Administration). Mr. Giroir, as administrator of Earline Giroir's estate, sought damages for Mrs. Giroir's pain and suffering (i.e., the survival action), and, as an individual, sought damages for his own losses caused by her death (i.e., the wrongful death action). On March 23, 1981, one year and three days after the death of his wife, Mr. Giroir supplemented and amended his petition by adding as plaintiffs his two major children, Rickey Giroir and Lark Giroir Pitre. He also changed his capacity as regards the survival action so that he appeared therein as an individual, rather than as the administrator of his wife's estate. All three plaintiffs reiterated the claims for the survival action and the wrongful death action.[1] By a second supplemental and amending petition the plaintiffs alleged Mrs. Giroir had been treated also by Drs. Kieran Key, Loc Nguyen, and John Dampeer, employees of SLMC, and that SLMC was responsible for their actions.
Defendants filed the peremptory exception urging the objection of prescription, alleging the claims of the children had prescribed because their suit was not filed within one year from the date of Mrs. Giroir's death. A hearing was held on the matter and the trial court overruled the exception. Later, during trial on the merits, the defendants filed a similar objection, urging the survival claims were subject to peremption rather than prescription. These objections, discussed in the trial court's reasons for judgment, were also overruled.
After a lengthy trial on the merits the court concluded plaintiffs had failed to prove any negligence on the part of Drs. Helm, Bankston, Dampeer or Makey. The court found Dr. Nguyen, the radiologist, negligent in failing to perform a "lateral view" and a "selective catherization" during an aortogram, which is a test involving x-rays taken after dye has been injected into the aorta. The court concluded Mrs. Giroir's problem would have been timely diagnosed had this test been performed properly. Since Dr. Nguyen was not named as an individual defendant, the court did not render judgment against him personally, but only against SLMC as his employer. The court stated that because it found SLMC liable, it need not reach the issue of Dr. Key's negligence. (Dr. Key, like Dr. Nyugen, was not named individually as a defendant so that if he was found negligent, only SLMC would be liable.)
The court awarded Roy Giroir, as administrator of the estate of Earline Giroir, the sum of $250,000 for her pain and suffering. It further awarded Mr. Giroir, individually, $100,000 on the wrongful death claim. Each of the two other plaintiffs, Rickey Giroir and Lark Giroir Pitre, received $50,000 on the wrongful death claim. SLMC filed a devolutive appeal.

ISSUES ON APPEAL
SLMC assigns several errors of the trial court. We will deal first with those errors which concern prescription and peremption.
For matters of clarity, we point out that we are dealing here with four separate aspects of the trial court judgment: (1) Mr. Giroir's wrongful death claim; (2) Mr. Giroir's survival claim; (3) the children's wrongful death claim; and (4) the children's survival claim. There is no dispute concerning Mr. Giroir's wrongful death claim. The other three claims involve issues of prescription and peremption.
Before addressing the individual claims, we note there has been much confusion in the jurisprudence as to the length of the prescriptive period for wrongful death and survival actions, as well as some dispute over whether the time periods are prescriptive or peremptive.
These matters were addressed in Guidry v. Theriot, 377 So.2d 319 (La.1979). There the Supreme Court held the survival action and the wrongful death action were separate *953 and distinct causes of action. Concerning the length of time in which a claimant must file suit, the court stated that in cases where the decedent has not instituted a tort claim on his own behalf, the beneficiaries or heirs must file the survival action within one year of the decedent's death. Likewise, the wrongful death action (regardless of whether or not the decedent had filed a tort suit) must also be instituted within one year of the death.
As to whether the time period is prescriptive or peremptive, the Guidry court, citing Pounds v. Schori, 377 So.2d 1195 (La. 1979), rehearing denied 1980, stated that there were several indications as to whether a statute was peremptive or prescriptive. One major indication of it being peremptive was when the statute creating the cause of action also provided a time period in which the action must be asserted. The court then discussed Civil Code art. 2315 and concluded that the article provided a one year time period specifically for the survival action but not for the wrongful death action. It concluded the wrongful death action was governed by the general tort time period (which was also one year) as provided in Civil Code art. 3536 (now art. 3492) and as such was considered to be prescriptive as opposed to peremptive. Without expressly so stating, the court indicated the survival action was subject to peremption. The issue was presented to this court in McClendon v. State, Through Dept. of Corrections, 357 So.2d 1218 (La. App. 1st Cir.1978) wherein we held directly that the survival action was subject to peremption.
The distinction between prescription and peremption is both theoretical and practical. On the theoretical side, prescription is said to merely bar the remedy sought and prevent the litigant access to the courts to exercise their existing rights. A peremptive statute totally obliterates the right sought to be enforced so that once the time period prescribes, the cause of action no longer exists. Pounds v. Schori, supra. On the practical side, the difference is that in contrast to prescription, peremption is not subject to suspension or interruption. Flowers, Inc. v. Rausch, 364 So.2d 928 (La.1978); Pounds, supra.

THE SURVIVAL ACTIONS
We will first consider the survival claims made by Rickey Giroir and Lark Giroir Pitre. Before addressing appellant's arguments concerning the peremption of these actions, we note a procedural quirk which has caused some confusion. Although all three plaintiffs sought to recover damages for Mrs. Giroir's pain and suffering, the trial court erroneously stated in written reasons that only Mr. Giroir had filed such a claim. Accordingly, the court did not address the issue of peremption or prescription of the children's claims; it simply rendered judgment on the survival action in favor of Mr. Giroir alone. Plaintiffs apparently did not notice this error and did not appeal the judgment nor file an answer to the appeal, as they must under La.Code Civ.P. art. 2133 in order to have the judgment modified. Therefore, under normal circumstances Rickey Giroir and Lark Giroir Pitre would not be entitled to have this issue considered or to have the judgment modified so as to include them in the survival action. Merely raising such an issue in brief is not sufficient. See Kel-Kan Inv. Corp. v. Village of Greenwood, 418 So.2d 669 (La.App. 2d Cir.1982), reversed on other grounds 428 So.2d 401 (La.1983) rehearing denied 1983; Lake LaFleur v. Evangeline Parish Police Jury, 347 So.2d 875 (La.App. 3d Cir.1977).
However, in this case this issue is in fact before the court in that it was raised by appellant. Appellant argues the court erred in failing to apportion the award on the survival action between the three plaintiffs. However, appellant's motive for raising this issue was not simply to rectify the trial court's oversight or to assure recovery by the children. Appellant contends that since the children's survival claims were not filed timely, Roy Giroir's award should be reduced by two-thirds, the amount that would have gone to the children had their claims not lapsed.
*954 Before addressing the apportionment issue we must first determine if the children's claims were filed timely. As discussed above, Civil Code art. 2315 provides specifically that survival claims must be filed within one year of the death of the deceased. Because survival claims have been classified as being governed by a peremptive period (McClendon, supra,) and as such are not subject to interruption or suspension (Flowers, supra,) the claim filed by Mr. Giroir did not affect the claims filed by the children. As such, the children's claims were not filed timely.
As to the apportionment and reduction of the award, we disagree. Appellant would have us make the award, proportion it among all three plaintiffs, conclude that the children's claims have perempted, and then reduce the award accordingly. This is a backward approach. The issue to be reached first is whether or not the children's claims were filed timely. Since we have determined that they were not, we cannot include the children in the judgment. Since their claims were not timely filed, they are simply not before the court in this matter. That leaves only one plaintiff, Mr. Giroir, who is entitled to recover whatever sums his wife would have been entitled to recover for her pain and suffering. Art. 2315 reads in pertinent part as follows:
"The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of: (1) the surviving spouse and child or children of the deceased, or either such spouse or such child or children; ..." (Emphasis added.)
This indicates to us that the survival action can be claimed by the spouse and children together, or by the spouse alone or the children alone.
We agree that when several parties are before the court and are entitled to recover in a survival action, the amount of the award should be apportioned equally among them. See Davis v. Owen, 368 So.2d 1052 (La.1979). However, we know of no authority which states that when only one of the potential claimants is before the court that his award must be reduced proportionately by the amount that could have been claimed by other parties. Under appellant's reasoning, if the two children here had not attempted to join their father in the survival action, we would still be required to reduce the amount awarded to Mr. Giroir by two-thirds. This result would be illogical and impractical. We find no substantive error in the trial court's granting the entire amount to Mr. Giroir.
Plaintiffs contend that because of La.R.S. 9:5628 and because of the doctrine of "contra non valentem," the one year time period did not begin running at Mrs. Giroir's death but began at some later point when they became aware that her death was caused by someone's negligent act. "Contra non valentem agere nulla currit praescriptio" is a doctrine which means no prescription runs against a person who is unable to bring an action. La. R.S. 9:5628 provides (in part) that claims against physicians and hospitals be filed within one year of the negligent act or within one year from the date of discovery of such act. Plaintiffs allege that they did not learn of the negligent act until some time after Mrs. Giroir's death and that the burden is on the defendant to prove exactly when this knowledge was acquired.
This argument has no merit. The general rule is that when it appears from the face of the pleadings (as it does in this case) that a claim is not filed timely, the burden is on the plaintiff to show an interruption or suspension of prescription. See Finch v. Lake, 396 So.2d 391 (La.App. 1st Cir.1981); Cordova v. Hartford Acc. & Indem. Co., 378 So.2d 1088 (La.App. 3d Cir.1979), reversed on other grounds, 387 So.2d 574 (La.1980), rehearing denied 1980. Although we are dealing here with peremption rather than prescription, we conclude the same reasoning applies, i.e., plaintiffs must show at what point they learned of the negligent act in order to prove that the *955 peremptive period began running at some point other than at Mrs. Giroir's death. There is no such evidence in the record.
Further, it has been held that La.R.S. 9:5628, which makes no specific provisions for wrongful death or survival actions, is a general statute. As such, it conflicts with art. 2315, which is a special statute providing a one year time period for survival actions. See Lambert v. Michel, 364 So.2d 248 (La.App. 3d Cir.1978), writ denied, 366 So.2d 917 (La.1979). The general rule is that in cases of conflict the special statute prevails, therefore the survival action is not governed by the time period provided in La.R.S. 9:5628, but by that provided in art. 2315.

THE WRONGFUL DEATH CLAIMS
We will next consider the wrongful death claims filed by the children. The trial court overruled the objections of prescription, stating that the amended petition "related back" to the date of the original petition, as provided by La.Code Civ.P. art. 1153. The trial court relied on Allstate Ins. Co. v. Theriot, 376 So.2d 950 (La.1979), rehearing denied 1979, and Nini v. Sanford Brothers, Inc., 276 So.2d 262 (La.1973), rehearing denied 1973.
The facts of Allstate are essential to understanding its holding. An employee, Moore, was injured on the job and was receiving workmen's compensation from Allstate. Moore's injuries were aggravated when his car was struck by Theriot's car. Allstate timely sued Theriot, to recover compensation benefits and medical payments paid on behalf of Moore. Allstate argued Theriot's negligence had caused Allstate to pay additional workmen's compensation benefits because of the aggravated injuries. Several months after the prescriptive period ran, Moore intervened for his own damages, pursuant to La.R.S. 23:1102.[2] Allstate's claim was later dismissed on a no right or no cause of action objection.[3] The issue facing the Supreme Court was whether or not the timely petition by Allstate interrupted prescription for the intervenor.
The court noted prescription was interrupted when suits were filed pursuant to La.R.S. 23:1101-1103 because only one principal cause of action was being asserted. The court concluded that even though Allstate had in fact failed to state a cause of action in the initial suit, Allstate's petition had interrupted prescription as to Moore. In analyzing the situation the court set forth the following test, p. 954:
"It is true that, if (as in this case) the subsequent claimant is a different person than the original plaintiff, then to interrupt prescription the first suit must not only be based upon the same factual occurrence as is the subsequent claim by amended petition or intervention; the subsequent claimant must also be closely connected in relationship and identity of interest with the original plaintiff." (Citations omitted.)
The court then cited several cases, including Nini, supra, wherein it had been held that the plaintiff in the first suit was closely connected to the plaintiff in the second suit so that the filing of the first suit interrupted prescription for the second claimant. The court noted that in each cited case, as in the one before it, the suit by the first plaintiff had given the defendant adequate notice of the possibility of subsequent claims based on the same cause of action.
The facts of Allstate and the cases cited therein are significantly different from the facts of the present case. As discussed above, the first plaintiff in Allstate was the employer's insurer, the second was an insured employee. In Nini, the first plaintiff *956 was a man who (unbeknownst to his attorney) had died prior to the time his workmen's compensation suit was filed on his behalf; the second plaintiff was his surviving wife who substituted herself as plaintiff. Other cases have reached the same result and involved a subrogor and a subrogee suing to recover for property damage [Allstate Ins. Co. v. Louisiana Gas Serv. Co., 344 So.2d 386 (La.App. 4th Cir.1977), affirmed at 354 So.2d 503 (La.1978)] and an employer's insurer and an employee suing a third party tortfeasor [National Surety Corp. v. Standard Accident Ins. Co., 247 La. 905, 175 So.2d 263 (1965), rehearing denied 1965.]
In each of these cases the late-coming plaintiff was suing on a cause of action which had already been asserted by the initial plaintiff and was not asserting an additional or different cause of action of their own. This is not true in the present case. Roy Giroir's wrongful death claim against SLMC is a separate and distinct cause of action from the wrongful death claims of the children. Although the injuries arose from the same factual circumstances, the cause of action asserted by Mr. Giroir for the loss of his wife is totally separate from that asserted by the decedent's chidren for the loss of their mother. This divergence of causes of action is made more evident by the resultant quantum evaluations which are dependent upon many varying factors.
It is conceded the children in this case are "closely connected in relationship and identity of interest with the original plaintiff," as set forth in the test in Allstate v. Theriot. However, we conclude this test is appropriate only when (as in Allstate and the cases cited therein) the late-filing plaintiff is asserting the same cause of action as the original plaintiff. If we were to apply the Allstate rationale to the present case we would be stating that any time a tort occurred, suit by one plaintiff would interrupt prescription as to all other plaintiffs closely connected to the original one, regardless of the number and diversity of the causes of action presented.
In his dissent in Allstate v. Theriot, Justice Blanche expressed serious doubt about the practical effects of the decision. He stated as follows, p. 955:
"This writer would be hard pressed to create a hypothet where there would be multiple victims of a single tortious act by a tortfeasor where the ruling by the Court today would not require us to hold that suit by one tort claimant would interrupt prescription in favor of all potential claimants. * * * In this writer's opinion, this case sets a precedent which practically destroys the social interest which prescriptive laws seek to protect."
It was stated in the above case that the basic purpose of prescription statutes is to give a defendant "security of mind and affairs if no claim is made timely, and to protect him from stale claims and from the loss or non-preservation of relevant proof." Although there is no question of loss of relevant proof in the present case, it is obvious that the defendant's "security of mind" was affected by the filing of two additional lawsuits after the one year period had run. One need only imagine even more devastating results under other factual circumstances. In a case similar to the one at hand, what if Mr. and Mrs. Giroir had ten children who each joined late as plaintiffs? What if instead of joining the suit three days after the prescriptive period had run, they had joined three years later? At what point is a defendant in such a situation entitled to assume he is subject to no further lawsuits and will suffer no additional liability? What is the purpose of the prescriptive statutes if not to protect a defendant from this anxiety?
Facts similar to those of Allstate v. Theriot, were presented in Louviere v. Shell Oil Co., 440 So.2d 93 (La.1983). This case, being heard by the United States Court of Appeals, Fifth Circuit, involved a workmen's compensation insurer who timely filed suit against a third party tortfeasor, alleged to be responsible for work-related injuries of certain employees. Several years after the injuries occurred two employees filed suit against the same defendants. *957 The Fifth Circuit, assuming the insurer's suit had interrupted prescription as to the employee's claims, certified the following question to the Louisiana Supreme Court: Whether the prescriptive period began running anew as of the date of the insurer's suit or whether it remained suspended during the pendency of the matter. In answering this question the Supreme Court discussed the reasons for allowing the first suit to affect the second suit and stated that in cases involving compensation insurers, employees and third party tortfeasors, only one cause of action was involved. The court then noted that when the suit by a second party stated a different cause of action, even though each cause arose from the same facts, the first suit does not interrupt prescription as to the second one. We thoroughly agree.
The jurisprudence reveals several other cases which recognize the necessity of the late-filing plaintiff suing on the same cause of action as the original plaintiff. In Moraus v. State, Through Dept. of Transp., 396 So.2d 596 (La.App. 3d Cir.1981), several people were involved in a two-car automobile accident. One party filed suit against the state and the state filed several incidental demands. A guest passenger (Lacy) intervened more than one year from the date of the accident. The trial court had relied upon Allstate v. Theriot, supra, and held that Lacy's suit had not prescribed. The Third Circuit reversed on this issue, noting that in Allstate and the cases cited therein, the suits filed involved closely connected plaintiffs and only one cause of action. In Moraus, as in the present case, separate and distinct causes of action existed, although they arose from the same set of facts.
In Ellenburg v. Commercial Union Ins. Co., 434 So.2d 1216 (La.App. 1st Cir.1983), a two-car collision occurred and the driver of one car sued the other. The defendant filed a reconventional demand and more than one year after the accident the parent of a minor guest passenger in plaintiff's car filed an intervention on the minor's behalf. Intervenor claimed the original suit or the reconventional demand had interrupted prescription on intervenor's behalf. This court analyzed the situation as follows, p. 1218:
"We reject intervenor's argument that as long as the facts and circumstances surrounding the accident are the same that suit by one party interrupts prescription as to all possible claims of various claimants regardless as to relationship or absence of identity of interest. The original petition related only to Ellenburg's cause of action, `the cause of action therein sued upon'[4] and not to the minor child's cause of action and particular damages. One accident, event, or factual occurrence may give rise to many causes of actions on the part of various claimants. Cf. Cullivan v. State Farm Mutual Ins. Co., 428 So.2d 1231 (La.App. 3rd Cir.1983). The cases cited in Allstate, supra, in which late claims were allowed are distinguishable, because, in each, the late-filer was suing upon a particular claim of a particular individual already presented in whole or in part." (Emphasis added.)
The facts of Moraus and Ellenburg are analogous to those in the present case. The plaintiffs in the cited cases sustained injuries from the same incident: an automobile accident. The plaintiffs in the present case were injured by the same occurrence: the wrongful death of Mrs. Giroir. However, just as the plaintiffs in the cited cases were found to have been suing on separate causes of action for their own separate and distinct damages, the plaintiffs in this case are doing so also. The fact that the plaintiffs in the present case are closely connected in relationship and *958 identity of interest is not sufficient to allow suit by one to interrupt prescription for the other because their causes of action are entirely separate. See also Brown & Root v. Missouri Pac. R. Co., 381 So.2d 1255 (La.App. 4th Cir.1980), writ denied 385 So.2d 794 (La.1980). For these reasons, we conclude the wrongful death claims of Rickey Giroir and Lark Giroir Pitre have prescribed.
Plaintiffs contend a recent Supreme Court decision supports their contention that Mr. Giroir's suit interrupted prescription for the claims of the children. In Gunter v. Plauche, 439 So.2d 437 (La. 1983), a plaintiff timely filed suit against a doctor based on a negligence theory. More than one year after filing the original suit, the plaintiff amended and supplemented his petition to assert a "lack of informed consent" cause of action. The issue before the Supreme Court was whether the second action had prescribed. The trial court and this court had both concluded prescription had not been interrupted for the second claim, because the first suit and the second suit asserted different causes of action. The Supreme Court reversed, holding that although separate from the first, the second cause of action "related back" to the first petition, because both causes of action arose out of the same facts. These facts were pled in the original petition; therefore, defendant was given notice of litigation arising from that general factual situation.
The facts of Gunter are distinguishable from those in the present case. Although at first glance the court's language concerning the causes of action would seem to support plaintiffs' position in this case, it must be noted the Gunter case did not involve a second plaintiff joining the suit. Its holding must be limited to cases wherein suit is filed timely by one individual who later asserts a new cause of action (based on the facts alleged in the original petition) against the same defendant. The holding of Gunter, when considered in light of the facts of that case, simply does not support plaintiffs' position in the present case.
Plaintiffs contend that regardless of our determination as to whether Roy Giroir's petition interrupted prescription for his two children, the prescription running against them was suspended in another way. They allege prescription was suspended when all three plaintiffs filed a claim with the medical review panel, pursuant to La.R.S. 40:1299.47, on March 16, 1981.
We reject this argument for two reasons. One, there is no evidence in the record that such a claim was filed. A pretrial memorandum refers to the claim and states it is attached as an exhibit, but no exhibit is found in the record. At trial the parties stipulated that none of the defendants had qualified under the Medical Malpractice Act but again, this is not direct evidence as to when, if and by whom a formal claim was filed.
Two, even if we were to determine the claim had in fact been filed we would still conclude the filing of the claim did not suspend prescription in this case. At the time the claim was allegedly filed, the pertinent statute, La.R.S. 40:1299.47(A), provided that the filing of a request for review would suspend prescription until ninety days following the issuance of the opinion by the medical review panel.[5] However, La.R.S. 40:1299.41(D) (also now amended) addressed the question of what effect the filing of a request had upon a health care provider who was not "qualified" under the Act. That statute read as follows:

*959 "A health care provider who fails to qualify under this Part is not covered by the provisions of this Part and is subject to liability under the law without regard to the provisions of this Part. If a health care provider does not so qualify, the patient's remedy will not be affected by the terms and provisions of this Part."
In interpreting these statutes, the Supreme Court has held that when a plaintiff files a claim under this act and the potential defendant is not covered by the act, the time period is not suspended. Ferguson v. Lankford, 374 So.2d 1205 (La.1979). See also, Dupont v. Doctor's Hospital, 369 So.2d 1092 (La.App. 1st Cir.1979), writs denied, 371 So.2d 834 (La.1979).
We now reach the final aspect of the prescription and peremption issues: Mr. Giroir's survival claim. SLMC contends that because this claim was initially filed by Mr. Giroir in his capacity as the administrator of his wife's succession, and was later amended to be in his individual capacity after the prescriptive period ran, that the claim has prescribed. We reject this argument.
Similar facts were presented in Meadoux v. Hall, 369 So.2d 240 (La.App. 4th Cir. 1979), writ denied, 369 So.2d 1366 (La. 1979). There, parents filed a wrongful death claim as administrators of their son's estate and later (after the prescriptive period ran) amended to sue in their individual capacities. The court concluded that under La.Code Civ.P. art. 1153, the amendment related back to the original filing of the petition. The court depicted the wrongful death action as having a peremptive period which is usually not capable of suspension or interruption, but noted that an exception is made when the amendment involves the same party filing in a different capacity. The court's holding insofar as it classified the wrongful death claim as being governed by a peremptive period is no longer valid in light of Guidry, supra, but the court's reasoning concerning the effect of the amended petition is sound and is applicable here.
We reach the same conclusion as the Meadoux court. We have here a plaintiff, in a certain capacity, asserting a certain cause of action. The amended petition is by the same plaintiff, appearing in a different capacity, asserting the identical cause of action as in the original petition. Because of the "close connexity" between the plaintiffs, the adequate notice to the defendant, and the single cause of action, we conclude the first suit interrupted prescription as to the second suit. See Allstate v. Theriot, supra.

QUANTUM
Appellant argues the amount of the judgment awarded to Mr. Giroir for his late wife's pain and suffering was an abuse of discretion and should be reduced. Although we consider the award of $250,000 to be somewhat generous, we do not find it to be so excessive as to justify the substitution of our judgment for that of the trial court. We, therefore, will not order it reduced. The negligent act occurred in October of 1980 when Dr. Nyugen failed to properly perform certain tests. Mrs. Giroir died in March of 1981 and in the interim five months suffered much discomfort from her gradually worsening condition. During this time period she visited SLMC four times, complaining of abdominal pain, nausea, vomiting and diarrhea. Her friends and family testified that her pain was chronic and she was unable to enjoy meals or participate in everyday activities. She then underwent an apparently unnecessary gall bladder surgery and only two days after being discharged was readmitted to the hospital because her symptoms had worsened. The last 20 days of her life were particularly painful in that she remained hospitalized and underwent surgery three times in six days. Again, testimony by her friends and family, as well as nurses, indicated she suffered severely during this time. On one occasion she was transported via ambulance to Ochsner's Clinic in New Orleans for a test during a time when she was extremely ill. She remained conscious until her death and seemed to realize she was dying. She lost 43 pounds in a *960 period of one year. These facts indicate to us that an award of $250,000 for pain and suffering is not so excessive as to be an abuse of the trial court's discretion.
Appellant argues further that the court erred in rendering judgment on the survival action in favor of Roy Giroir, as administrator of the estate of Earline Giroir. We agree that the proper plaintiff is Roy Giroir, individually, and amend the judgment accordingly.
For these reasons, the judgment of the trial court, insofar as it awarded damages to Rickey Giroir and Lark Giroir Pitre, is reversed. That portion of the judgment which awarded $250,000 to Roy Giroir, as administrator of the Estate of Earline Giroir, is hereby amended to be in favor of Roy Giroir, individually. The portion of the judgment which overruled, denied and dismissed the peremptory exception, as it related to Rickey Giroir and Lark Giroir Pitre, is also reversed. In all other respects the judgment is affirmed. Costs are to be paid by defendant SLMC in the amount of $1,543.26.
REVERSED IN PART; AMENDED IN PART AND AS AMENDED, AFFIRMED.
NOTES
[1] The petition also renamed defendant SLMC as "South Louisiana Medical Center, Division of Hospitals, Louisiana Health and Human Resources Administration, State of Louisiana."
[2] La.R.S. 23:1101-1102 allow the employee, his dependant, the employer or the employer's compensation insurer to file a tort suit against any person responsible for the employee's compensable injury or disease. If such a suit is filed by one of the above mentioned parties, the other party may intervene as a plaintiff in order to recover their own losses.
[3] See Allstate Ins. Co. v. Theriot, 362 So.2d 1214 (La.App. 4th Cir.1978), for a detailed explanation.
[4] This quote is from La.R.S. 9:5801 (now repealed and substantively included in Civil Code art. 3462) which read in pertinent part as follows:

"All prescriptions affecting the cause of action therein sued upon are interrupted as to all defendants ... by the commencement of a civil action in a court of competent jurisdiction and in the proper venue."
[5] The statute was later amended to provide that in cases where the health care provider was not covered under the act, the time period was suspended until 60 days after the commissioner of insurance notifies the claimant of such fact. This amendment became effective September 1, 1981, some 5½ months after this claim was allegedly filed. Such a statute is considered remedial and is usually applied retroactively to all actions instituted after it becomes effective, even though the cause of action arose under the old law [Lott v. Haley, 363 So.2d 1270 (La.App. 4th Cir.1978)]. However, in the present case the claim was made on March 16, 1981, under the old law, and must be governed accordingly.