482 So.2d 662 (1985)
Bryan and Gloria DYKES, et al.
v.
PEABODY SHORELINE GEOPHYSICAL and Transportation Insurance Company.
Eddie L. and Maxine ARD
v.
PEABODY SHORELINE GEOPHYSICAL and Transportation Insurance Company.
Ruth CAMPBELL
v.
PEABODY SHORELINE GEOPHYSICAL and Transportation Insurance Company.
Nos. 84-CA-0140 to 84-CA-0142.
Court of Appeal of Louisiana, First Circuit.
November 19, 1985.
Rehearing Denied February 7, 1986.
*663 Paul H. Due, Baton Rouge, for plaintiff, appellee.
Richard F. Zimmerman, Jr., Baton Rouge, for defendant, appellant.
*664 Before EDWARDS, SHORTESS and SAVOIE, JJ.
EDWARDS, Judge.
The plaintiffs in these consolidated cases sued to recover property damages and general damages for inconvenience, mental anguish and invasion of privacy, the damages having been caused by seismic blasting operations conducted by defendant, Peabody Shoreline Geophysical (Peabody). The suits were tried together before a jury which awarded plaintiffs a total of $180,000. Peabody and its insurer, Transportation Insurance Company, have suspensively appealed the judgment.
Peabody raises five basic issues. First, Peabody contends that plaintiffs failed to prove that its activities caused the damages. The second contention is that the jury's awards were excessive. Third, that the trial court erred in denying Peabody's exception of prescription on the claims brought by the two minor children of Bryan Dykes. The fourth issue raised is that the trial court erroneously taxed as costs the fees for certain discovery depositions never introduced or admitted at trial, and fees for supposedly expert witnesses who were never qualified as experts or accepted by the trial court. Finally, Peabody assigns error to the admission of certain hearsay testimony.
Defendant was conducting seismic operations in and around Montpelier, Louisiana, in December of 1980. The particular explosion complained of occurred at about noon at a drill site located on Mrs. Campbell's property approximately 700 feet from her home. Five one-pound charges of explosives, spaced five feet apart on a line and lowered 100 feet below ground, were to be detonated in sequence at intervals of thirty seconds. For some reason unknown, the entire load went off at the same time. Plaintiffs testified that they were quite startled and that the earth shook and windows and walls rattled.
Four of the five plaintiffs were at home when the blast occurred. Bryan Dykes had come home for lunch. He testified that he heard a single blast that "felt like an earthquake" and "shook the whole house." He then saw a crack in the fireplace in the mortar of the brick above the mantel. Gloria Dykes, his wife, was in the kitchen cooking. She said that she heard a loud noise, felt a tremor, and then saw a crack in the kitchen floor.
Maxine Ard, who had been working in her garden and had just stepped inside, also testified that the explosion felt like an earthquake and that it shook the whole house. Mrs. Campbell testified that she had just lain down after lunch and was lying upon her bed when she felt the house and the bed shake.
Later that day, Bryan Dykes drove over to the blasting site. He was the mayor of Montpelier at the time and was aware that seismic operations had been in progress for a couple of weeks. He testified that he met a man who was sitting in a Peabody company truck who told him that they had made a mistake and had accidently set off all five charges at once. The man agreed to accompany Dykes to his home to inspect the damages. The man also contacted Joseph Faulk, Peabody's permit agent, who arrived about an hour later. Dykes testified that Faulk admitted Peabody's responsibility for all the damages caused by the explosion and that Faulk agreed to bring in insurance adjusters to settle the damage claims in a couple of weeks. Ultimately, Dykes testified, Faulk apparently changed his mind and did nothing.
Immediately after the explosion, Maxine Ard telephoned Bryan Dykes to find out what had happened. She then went to the blast site herself. She testified that she, too, met a man there who said Peabody had had an accident.
All of the plaintiffs testified that prior to the explosion their homes were in generally good condition but that immediately after it, and in the weeks that followed, there appeared various damages which they attributed to the blast and which, in the case of the Ard and Dykes homes, progressively worsened during the three years before trial.
*665 Dykes testified that he and his family had to move out of their house for three or four days while he located and repaired a break in the sewer line to the septic tank. In addition, he said there was a crack which ran the length of the slab upon which the house was built, indicating structural damage.
Eddie and Maxine Ard testified to similar damages, including problems with the waterline to their commode and cracks in the slab and in the mortar on both sides of the house.
Mrs. Campbell testified that the explosion knocked some plates off her kitchen wall and that several weeks later about half of her kitchen ceiling collapsed, ruining the carpet. She found it particularly stressful, she said, since at that particular moment she was fixing lunch for her husband who was recovering from a heart attack. Mrs. Campbell, like the other plaintiffs, suffered plumbing problems, having to replace some broken galvanized pipes under her house.
In addition, Mrs. Campbell testified that Peabody trespassed on her property. She said that she had signed a permit, which she introduced into evidence, authorizing Peabody to lay cable across her property but giving no permission for seismic activity. Several weeks after the explosion, accompanied by Bryan Dykes, she found drill holes on a corner of her property where the blasting had been done.

HEARSAYCAUSALITY
Defendants contend that plaintiffs failed to prove a causal connection between the seismic activities and the damages. At trial, plaintiffs offered testimony concerning statements made by the unidentified truck driver and Joe Faulk in support of causality. Defendants allege error by the trial court in admitting this hearsay testimony. We hold that while it is hearsay, it is also admissible. Plainly, material statements of an agent who is acting for a principal are admissible as an exception to the hearsay rule when offered by a party opponent. Pennington v. F.G. Sullivan, Jr., Contractors, Inc., 416 So.2d 192 (La. App. 1st Cir.1982), writ denied, 421 So.2d 248 (La.1982). Furthermore, declarations against pecuniary interests are an admissible exception, even when made by a person not a party to the litigation. Campbell v. American Home Assurance Company, 260 La. 1047, 258 So.2d 81 (1972).
Peabody was less than staunch in defending this point. Counsel made no objection to the admission into evidence of Joe Faulk's business card. This card on its face clearly confirmed that Joe Faulk was Peabody's agent. Moreover, defendants raised no objection to the testimony by Bryan Dykes that the unidentified Peabody employee in the truck telephoned Joe Faulk and asked him to come discuss with plaintiffs the damages they had sustained.
We hold, therefore, that plaintiffs adequately carried their burden of proving a causal connection between the explosion and the damages.
In rebuttal, Peabody offered the argument of "scientific impossibility." This consisted of testimony by an expert in explosives and stress analysis who holds degrees in mathematics and physics. The witness purported to show, by mathematical and scientific calculations, that it was a total impossibility for the explosion to have caused the damage. This defense has been used before in blasting cases, with minimal success. Given the choice between an obvious fact and a technical, scientific denial of that fact, our courts have refused to accept the denial. In Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845 (1955), the Supreme Court said at page 848:
Impressed as we are with the unchallenged and unrebutted proof by plaintiffs, we necessarily conclude that the evidence clearly establishes the claim of plaintiffs in that the general and extensive damages to their homes were non-existent prior to, and were the causal result of, the geophysical operations conducted by defendants. The fact that plaintiffs did not discover these substantial *666 injuries until two days after defendants' operations, or that the homes were of frail or cheap construction (with no substantive proof to support this conclusion) does not in any wise relieve defendants of liability.
Similarly, in Pate v. Western Geophysical Co. of America, 91 So.2d 431, 433 (La. App. 2d Cir.1956), dismissing the defendant's argument of scientific impossibility, the Second Circuit observed,
Again, while it may be said that such testimony establishes the so-called scientific impossibility of the damage resulting from the explosive operations, the fact is that the only reasonable conclusion is that such damage was caused by and is attributable to defendant's operations.
In Roshong v. Travelers Insurance Company, 281 So.2d 785, 788 (La.App. 3d Cir.1973), the Third Circuit went so far as to establish a rule of evidence:
[W]e find that the expert testimony ... that the injury sustained under the circumstances could not possibly have been caused by the seismic explosions ... legally insufficient to rebut the prima facie case established by Roshong. Five witnesses testified that damage to the structure was nonexistent at the time of the blasts and became apparent within two days of the explosions. The evidence supports a conclusion that all damage found by the experts is related to the seismic explorations, and that these explorations were a cause in fact of all of the damage. (Emphasis added.)
See also Peak v. Cantey, 302 So.2d 335 (La.App. 1st Cir.1974); Greer v. State Department of Transportation and Development, 437 So.2d 1170 (La.App. 2d Cir.1983); Wright v. Superior Oil Co., 138 So.2d 688 (La.App. 3d Cir.1962).

EXCESSIVE DAMAGES
Defendants contend that the jury abused its discretion in awarding damages. The jury awarded each of the plaintiffs a lump sum which included property damage and damages for mental anguish, inconvenience, and invasion of privacy in the following amounts:

Bryan Dykes - $ 49,000.00
Gloria Dykes - 49,000.00
Bryan Dykes as Administrator - 1,000.00
for Bryan Dykes, Jr.
Bryan Dykes as Administrator - 1,000.00
for Wm. Scott Dykes
Eddie Lamon Ard - 30,000.00
Maxine Ard - 30,000.00
Ruth Campbell - 20,000.00
 ____________
Total $180,000.00

Because of the lump sum awards, it is difficult to determine which portion of each amount is attributable to property damage and which to general damages. Nonetheless, testimony indicated that the Ard and Dykes homes suffered such structural damage that repairs could not be guaranteed because the integrity of the foundations had been undermined. It was the opinion of two witnesses that new foundations would be necessary, requiring virtual "rebuilding" of the homes. Additionally, there was some evidence of the general damages such as inconvenience and mental anguish suffered by the Dykes and the Ards. Given this evidence, we cannot say that the generous awards to Mr. and Mrs. Dykes and Mr. and Mrs. Ard were an abuse of the jury's discretion. Reck v. Stevens, 373 So.2d 498 (La.1979).
Ruth Campbell claims property and general damages as a result of trespass and seismic blasting. The only evidence as to the value of her property damage came from the defendants' witness who testified without objection that the value of repairs to Mrs. Campbell's house was $1,227.95. Because the awards are in globo and this figure is the only evaluation of Mrs. Campbell's property damage, it must be concluded that by far the greater part of the $20,000.00 award is for general damages.
The jury has much discretion in fixing general damages such as mental anguish. Reck v. Stevens, 373 So.2d at 499. But the burden of proving these damages rests with the plaintiff, who must establish them by competent evidence. Lloyd v. *667 Hunt Exploration, Inc., 430 So.2d 298 (La. App. 3d Cir.1983) (reducing the award for general damages in a seismic explosion case); Meyers v. Imperial Casualty Indemnity Company, 451 So.2d 649 (La.App. 3d Cir.1984) (reversing a jury award for mental anguish for a "paucity" of evidence); Vial v. South Central Bell Telephone Company, 423 So.2d 1233 (La.App. 5th Cir.1983); writ denied, 432 So.2d 265 (La.1983) (reversing a jury award for mental anguish and inconvenience in a trespass case).
Mrs. Campbell sought recovery for invasion of privacy, but the record is devoid of evidence demonstrating that she actually suffered from such an invasion. She claimed damages because of inconvenience and embarrassment, but there is no evidence of embarrassment or of the extent to which she was inconvenienced. (For example, there is no suggestion that she was forced to move from her home, nor is there testimony showing how long clean-up and repairs might have lasted.) She claims damage for loss of use, but the record contains no indication that she was required to move or was in any significant way limited in her use of her home. Generalizing, support for these damages rests primarily on inferences and extrapolations from the record, if not simply on speculation. Finally, Mrs. Campbell asks for an award for mental anguish, either from the blasting or the trespass. She testified that she was "scared" by the blast and by the falling ceiling. But she did not expand on this comment to complete the picture of her mental state. Gele v. Markey, 387 So.2d 1162 (La.1980). Meyers, 451 So.2d at 659.
The evidence shows that Mrs. Campbell did suffer some damage, but an analysis of the facts and circumstances peculiar to this case and Mrs. Campbell reveals that the $20,000.00 award is excessive. Reck, 373 So.2d at 501. Accordingly, we must reduce her award. She is entitled to the $1,227.95 for property damage, together with $2,500.00 for her mental anguish, inconvenience and trespass, or a total of $3,727.95.

EXCEPTION OF PRESCRIPTION
The original petition was filed by Bryan and Gloria Dykes on July 22, 1981. They subsequently filed an amended petition, adding as plaintiffs their two minor children, Bryan, Jr., and William Scott, on March 21, 1983, more than a year after the blasting operations. Peabody filed an exception of prescription which was denied by the trial court.
Plaintiffs contend that the original suit interrupted prescription of the minors' claims under Allstate Insurance Company v. Theriot, 376 So.2d 950 (La.1979). Their theory is that the children's claims arose out of the same factual occurrence and that they are closely enough connected in relationship and interest to the original plaintiffs.
This court has interpreted the Theriot case to mean that the first suit will interrupt prescription of the second suit only when "the late filing plaintiff is asserting the same cause of action as the original plaintiff." Giroir v. South Louisiana Medical Center, 453 So.2d 949, 956 (La. App. 1st Cir.1984), writs granted, 458 So.2d 108, 109 (La.1984). See also Ellenburg v. Commercial Union Insurance Company, 434 So.2d 1216 (La.App. 1st Cir. 1983).
In Giroir, recently decided by the Supreme Court, the standards for amendment have been sufficiently loosened that we must modify our position somewhat. The Court said:
Accordingly, an amendment adding or subtracting a plaintiff should be allowed to relate back if (1) the amended claim arises out of the same conduct, transaction or occurrence set forth in the original pleading; (2) the defendant either knew or should have known of the existence and involvement of the new plaintiff; (3) the new and the old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or *668 unrelated; (4) the defendant will not be prejudiced in preparing and conducting his defense.
The Court further clarified these rules when it said:
Through the original pleading the defendants knew that judicial relief was sought arising from the general factual situation alleged, and they were put on notice that their evidence concerning it should be collected and preserved. The fundamental purpose of prescription statutes is only to afford a defendant economic and psychological security if no claim is made timely, and to protect him from stale claims and from the loss or nonpreservation of relevant proof. They are designed to protect him against lack of notification of a formal claim within the prescriptive period, not against pleading mistakes that his opponent makes in filing the formal claim within the period.
Giroir v. South Louisiana Medical Center, 475 So.2d 1040 (La.1985).
In light of this decision, we hold that the two Dykes children were properly included in the judgment under review. The trial court was correct in overruling the exception of prescription in their regard.

COURT COSTS
Defendants assign as error the inclusion in court costs of fees for certain discovery depositions and payments to witnesses who were neither qualified nor accepted by the trial court as experts.
Under LSA-R.S. 13:4533, costs of discovery depositions which are "used on the trial" shall be taxed as costs. In Succession of Franz, 242 La. 875, 139 So.2d 216 (1962), the court held that discovery depositions actually introduced and filed into evidence are "used on the trial" within the meaning of the statute, but it did not decide whether use at trial short of filing into evidence also qualified. Subsequent decisions, however, have held that deposition costs may be taxed as costs only if the depositions are actually introduced and filed into evidence. Similarly, in Brashers v. Shreveport Ambulance Service, 424 So.2d 409 (La.App. 2d Cir.1982), the court held that costs for depositions which had been marked for identification but not actually filed into evidence could not be taxed as costs.
In the present case, plaintiffs' attorney made use of three discovery depositions on cross examination, attempting to impeach defense witnesses. However, he neither introduced the depositions nor filed them into evidence. We hold, therefore, that it was error to include these items as costs.
Defendants also contend that the trial court erred in awarding expert witness fees to Mr. Pecararo, Mr. Noto and Mr. Battles because they were never qualified or accepted by the court as experts. Defendants cite Hebert v. Diamond M. Company, 385 So.2d 410 (La.App. 1st Cir. 1980), writs denied 390 So.2d 203 (La. 1980), in which this court held that it was error for the trial court to award fees to witnesses who did not offer any expert testimony. In the present case, however, Mr. Pecararo, Mr. Noto and Mr. Battles each offered expert testimony on the extent of damages to the three homes. And although plaintiffs' attorneys did not formally tender the witnesses as experts, defendants' attorney raised no objection to their standing as experts when they testified. Consequently, since the defense did not object to testimony that had the attributes of expert testimony, it has waived its right to object to the testifying witnesses' being treated as experts. State Department of Highways v. Breedlove, 188 So.2d 608 (La.App. 3d Cir.1966). Under these circumstances, we find no error in the trial court's award of expert witness fees. We hold, therefore, that the trial court was correct in awarding expert witness fees in these circumstances.
*669 AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.