NORRIS, Judge.
Plaintiffs, Mary Jane Eiskina, Cynthia Eiskina, Michael Eiskina and Tammy Eiski-na, are the widow and children, respectively, of Raymond Eiskina. Defendants are Dr. Stephen Keasler, Dr. William T. Hall, Hartford Insurance Co., Emergency Physicians of Physicians and Surgeons Hospital, and the State of Louisiana. Plaintiffs and the State of Louisiana appeal a judgment dismissing Dr. Keasler and his insurance company, Hartford,[1] from this malpractice suit on an exception of prescription. There was no evidentiary hearing on the exception. It was submitted to the court on the parties’ joint stipulation of the facts contained in various exhibits.
Raymond Eiskina was hospitalized on August 18, 1980 at Physicians and Surgeons Hospital for pain in his right kidney. On August 22, 1980, Dr. Keasler and Dr. Hall inserted Gianturco coils into Mr. Eiski-na’s bloodstream as a prelude to removing the right kidney. As was later determined, one or more of the coils migrated and impaired the blood flow to the left kidney. On August 25, 1980 Mr. Eiskina’s right kidney was removed. On August 29, 1980 the doctors learned that his left kidney was being destroyed by the impairment of the blood stream. Mr. Eiskina remained on dialysis until his death on July 17, 1982.
On August 5, 1981 plaintiffs’ counsel wrote the Commissioner of Insurance to determine whether Dr. Keasler was covered under the Medical Malpractice Act (MMA). On August 7, 1981 the Commissioner’s office responded that Dr. Keasler, as an employee of Emergency Physicians of Physicians and Surgeons Hospital, was qualified under LSA-R.S. 40:1299.41, et seq., and sent the appropriate certificate of enrollment for Emergency Physicians. At this point, a prima facie case had been made that Dr. Keasler was a qualified health care provider under the MMA. Hill v. Brentwood Hosp., Inc., 480 So.2d 875 (La.App. 2d Cir.1985); Goins v. Texas State Optical, Inc., 468 So.2d 743 (La.App. 4th Cir.1985). On August 11, 1981, the plaintiffs submitted their petition for a medical review panel to the Commissioner in accordance with the MMA’s requirement that before suit can be filed against a qualified health care provider the claim must be processed through a panel. § 1299.41, et seq. In compliance with the statute, the Commissioner’s office again responded that Dr. Keasler was qualified under the Medical Malpractice Act, although his insurer was incorrectly identified as Chubb. On May 24, 1982 the Commissioner of Insurance’s office corrected this, stating that the insurer was Vigilant Insurance.
The medical review panel issued an opinion on August 26, 1982, in which it questioned whether Dr. Keasler’s actions were covered under the provisions of the Vigilant policy and did not consider whether his actions met the applicable standard of care. This posed a material issue of fact not requiring expert medical opinion, thus necessitating a lawsuit. § 1299.47 G. Plaintiffs filed this suit October 22, 1982. August 21, 1984 Vigilant Insurance Company was dismissed with prejudice from the suit on a motion for summary judgment. Vigilant contended that Dr. Keasler had not been performing emergency services to the deceased and that its policy covered emergency medicine only. On August 26, 1986 appellees’ attorney requested Dr. Keasler’s certificate of enrollment for the time of the alleged malpractice. Pursuant thereto, on August 27, 1986 the Commissioner’s office furnished appellees’ attorney the certificate *1291 of enrollment showing that Dr. Keasler was qualified under the Medical Malpractice Act for emergency medicine only.[2] Dr. Keasler and Hartford then filed this exception of prescription which the trial court sustained, dismissing the suit as to both.
Plaintiffs appeal the judgment on the exception. We address only their first assignment of error, reversing the lower court’s decision.
The trial court found that Dr. Keasler was not qualified under the MMA, and therefore prescription was not suspended by the filing of a petition for a medical review panel.[3] LSA-R.S. 40:1299.41, et seq. The trial court’s finding that Dr. Keasler was not qualified under the act was based on stipulated exhibits which indicated that the medical acts Dr. Keasler performed on Mr. Eiskina were unrelated to emergency room activity and the Certificate of Enrollment issued August 27, 1986 that purported to list Dr. Keasler as qualified for emergency medicine only. The trial court erred in this determination. Dr. Keasler was a qualified health care physician under the MMA, and therefore plaintiffs received the benefit of the suspension of prescription provision in 40:1299.47 A.
It was shown in the stipulated evidence that Dr. Keasler was a qualified health care physician; the only issue is whether he was qualified to only a limited extent, for emergency medicine only. To be qualified under the MMA, a health care provider must file proof of financial responsibility and pay a statutorily authorized surcharge. Dr. Keasler’s financial responsibility was established by his filing with the Commissioner of Insurance proof that he was insured by a policy of malpractice liability insurance in the amount of at least $100,-000 per claim. LSA-R.S. 40:1299.42 A and E. A health care provider is a person, corporation, facility or institution licensed by this state to provide health care or professional services as a physician. 1299.41 A(l). Physician means a person with an unlimited license to practice medicine in this state. § 1299.41 A(2).
Dr. Keasler, a person with an unlimited license to practice medicine in this state, had filed proof that he was insured by a policy of malpractice liability insurance in the amount of at least $100,000 per claim. Malpractice is defined as any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider to a patient. LSA-R.S. 40:1299.41 A(8). Health care means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient’s medical care, treatment or confinement. § 1299.41 A(9).
The statute plainly contemplates a fully licensed medical practitioner who is insured for any unintentional tort or breach of contract based on any act or treatment performed or furnished by the practitioner on behalf of a patient within the state of Louisiana. The insurer assumes all obligations to pay an award imposed against the insured for his unintentional tort or breach of contract under the provisions of the statute. § 1299.45 D(l). Notably, the statute does not contemplate that a health care provider be qualified only in specific areas of health care, but rather that he *1292 qualify with unlimited medical malpractice coverage. § 1299.45 C provides that
[a]ny provision in a policy attempting to limit or modify the liability of the insurer contrary to the provisions of this part is void, except that a provision in a malpractice liability insurance policy approved by the insurance commissioner which limits the aggregate sum for which the insurer may be liable during the policy period shall be valid.
Thus, for the purpose of this exception, any attempt by Vigilant to limit its coverage or Dr. Keasler’s qualification to emergency medicine only is void and does not affect his status as a qualified health care provider.
Even if we had found that Dr. Keas-ler was not a qualified health care provider, we would have reversed the trial court's judgment by applying LSA-R.S. 40:1299.41 as amended by Act No. 792 of 1981. See Doyle v. St. Patrick Hospital, 499 So.2d 704 (La.App. 3d Cir.1987), writ denied 503 So.2d 478 (La.1987). LSA-R.S. 40:1299.41 as amended makes a separate provision for situations in which the non-qualified health care provider is liable in solido with a qualified health care provider against whom a claim has been filed. However, § 1299.41 H[4] provides that this applies only to a claim that has been submitted for review prior to September 1, 1981, but in which the third health care provider panelist has not been selected. The Eiskinas’ claim was submitted well before September 1, 1981, and the record does not reveal the date the third health care provider panelist was chosen. The last sentence of H specifies that the provision for the suspension of prescription does not apply to any act of malpractice which has not been duly submitted for review and which has prescribed on September 1, 1981. However, in Doyle v. St. Patrick Hospital, supra, the Third Circuit interpreted this provision as if it read “or”, holding that either prescription of the claim on September 1, 1981 or failure to have submitted it by that date would preclude the applicability of the amendment. We disagree with that interpretation. A plain reading of the statute would dictate that it be inapplicable only in those situations in which the claim had both prescribed and not been submitted. The question of on what date prescription began to run is not answered by the record before us, but it would not be necessary to address because the claim was timely submitted for review to the Commissioner of Insurance before September 1, 1981. The date of the third panelist’s selection, under § 1299.41 G,[5] would have been determinative. Because we find Dr. Keasler was a qualified health care provider, remand is not necessary on this point.
Since Dr. Keasler was qualified under the MMA, the filing of a request for review of the claim against him suspended prescription until ninety days following the issuance of the opinion by the medical review panel. § 1299.47 A. The panel’s opinion was issued August 26, 1982, and suit was filed October 22,1982, well within the ninety days before prescription would have begun to run again.
*1293 The trial court’s judgment sustaining the exception of prescription was therefore in error and is reversed. The case is remanded for further proceedings in accord with this opinion. Costs of this appeal are assessed to the appellees, Dr. Keasler and Hartford.
REVERSED AND REMANDED.

. Hartford was released only in its capacity as Dr. Keasler's insurer, not as Dr. Hall's.

. The certifícate of enrollment showed that the named insured, Stephen R. Keasler, M.D., was certified as an Enrollee under LSA-R.S. 40:1299.41 et seq. with effective dates of January 1, 1980 to Jan. 1, 1981. It certified that Vigilant Insurance Company acknowledged primary responsibility for that period with professional liability coverage for $100,000. The required surcharges were acknowledged as paid. An asterisk at the bottom accentuated the phrase "emergency medicine only."

. Filing a health care claim in accordance with the MMA does not interrupt or suspend prescription as to a non-qualified health care provider. § 1299.41. Ferguson v. Lankford, 374 So.2d 1205 (La. 1979); Juneau v. Hartford Ins. Co., 458 So.2d 1011 (La.App. 3d Cir.1984), writ denied 462 So.2d 198 (La. 1984); Dupont v. Doctor's Hospital, 369 So.2d 1092 (La.App. 1st Cir. 1979), writ denied 371 So.2d 834 (La.1979); Giroir v. South Louisiana Medical Center, 453 So.2d 949 (La.App. 1st Cir.1984), reversed on other grounds 475 So.2d 1040 (La.1985). This has since been statutorily amended by acts 791 and 792 of 1981.

. LSA-R.S. 40:1299.41 H provides:
The provisions of this Part do not apply to any act of malpractice which occurred before September 1, 1975. The provisions of this Part that provide for the suspension of the running of prescription with respect to a health care provider who is answerable in solido with another health care provider apply to an act of malpractice which has been duly submitted for review prior to September 1, 1981 but in which the third health care provider panelist has not been selected. The provision for the suspension of the running of prescription does not apply to any act of malpractice which has not been duly submitted for review and which has prescribed on September 1, 1981.

. LSA-R.S. 40:1299.41 G provides:
Notwithstanding the provisions of Subsection D, the running of prescription against a health care provider who is answerable in solido with a qualified health care provider against whom a claim has been filed for review under this Part shall be suspended for a period of ninety days after a panel is formed under the provisions of this Part, provided a claim is made against the in solido obligor either under the provisions of this Part or in a court of law within the ninety day period. For the purpose of this Part the panel shall be deemed to be formed on the date that the third health care provider member of the panel is chosen.