357 So.2d 1218 (1978)
Mrs. Gail Verberne McCLENDON
v.
STATE of Louisiana, Through the DEPARTMENT OF CORRECTIONS.
No. 11788.
Court of Appeal of Louisiana, First Circuit.
March 20, 1978.
Rehearing Denied May 2, 1978.
*1219 John W. deGravelles, of Due, Dodson & deGravelles, Baton Rouge, for plaintiff.
Richard Rudolph, Baton Rouge, for defendant.
Before LOTTINGER, EDWARDS and PONDER, JJ.
EDWARDS, Judge.
This is a suit filed by Gail Verberne McClendon for damages resulting from the death of her parents, Dolly Lawrence Verberne and Ellsworth Charles Verberne. Named as defendant is the State of Louisiana, through the Department of Corrections. Plaintiff appeals the dismissal of her suit on a peremptory exception of prescription and/or peremption.
On February 22, 1974, plaintiff's parents were murdered at their home in Washington Parish, Louisiana by a then unknown assailant. The assailant also allegedly stole approximately $90,000.00 in cash and personal property from a safe located at the residence. A full investigation of the incident by the public authorities failed to identify the perpetrator of the *1220 crime, until Frank M. Scianna, an inmate of the Louisiana State Penitentiary, who had been released from Angola on a weekend pass or furlough at the time the murders occurred, was indicted by a Washington Parish grand jury on March 10, 1976.
On June 29, 1976 (more than a year following the deaths, but less than a year after the discovery of the identity of the alleged murderer), plaintiff instituted this suit against the Department of Corrections. Plaintiff contends that the Department should be held strictly liable or, in the alternative, negligent in granting a furlough to Scianna, a man with a record of two previous homicides.
The Department interposed a peremptory exception of prescription and/or peremption, contending that plaintiff's suit, filed more than a year after the death of her parents, was untimely.
The trial court, in sustaining the exception, found that plaintiff's sole cause of action is an action for wrongful death under LSA-C.C. art. 2315; that the time limitation applicable to the wrongful death action is set forth in LSA-C.C. art. 2315; that this time limit is peremption rather than prescription; and that plaintiff's action is extinguished since it was not enforced within one year after the death of her parents.
Plaintiff assigns three specifications of error:
I. The trial court erred in finding that plaintiff did not possess and properly allege two distinct causes of action based on (1) wrongful death and (2) the heritable right of property conversion.
II. The trial court erred in finding that the action for property conversion was barred by the one year limitation of LSA-C.C. art. 2315.
III. The trial court erred in finding that the action for wrongful death was controlled and barred by the one year limitation of LSA-C.C. art. 2315.

I.
Plaintiff contends that the trial court erred in finding that her sole cause of action was an action for wrongful death.
Our examination of plaintiff's petition reveals that this contention is well founded. Paragraph 8 of the petition provides, in part:
"Plaintiff, as the sole heir and next of kin of her lawful parents, itemizes damages which she is entitled to recover from defendants as follows:
5. Loss of property and estate resulting from the theft of at least $90,000.00 from the safe located at her parents' residence."
Clearly, plaintiff was including, in the instant suit, her claim for the personal property allegedly stolen by her parents' murderer. This "conversion" action is distinct from plaintiff's cause of action based on her parents' wrongful death, Lincecum v. Smith, 287 So.2d 625 (La.App. 3rd Cir. 1973), writ refused 290 So.2d 904 (La.1974), and was a tort committed against the plaintiff herself, if the property was appropriated by the murderer after the death of plaintiff's parents. LSA-C.C. art. 2315(1). See LSA-C.C. arts. 940 and 941; Dion v. Knap, 230 So.2d 842 (La.App. 1st Cir. 1970). Alternatively, if the property was converted prior to the parents' death, plaintiff's recovery would be predicated upon LSA-C.C. art. 2315(2) which provides:
"The right to recover damages to property caused by an offense or quasi offense is a property right which, on the death of the obligee, is inherited by his legal, instituted, or irregular heirs, subject to the community rights of the surviving spouse."
Plaintiff, therefore, has alleged two distinct causes of action, one for wrongful death and the other for conversion of property.

II.
Next, plaintiff contends that the applicable time limitation on assertion of her right to recover damages to property is contained in LSA-C.C. art. 3536. Plaintiff further contends that her action has not prescribed since, she argues, the prescriptive period *1221 was suspended under the doctrine of contra non valentem agere non currit prescriptio.[1]
There is no time limitation expressed in LSA-C.C. art. 2315 regarding either the personal right to sue for quasi offenses or the heritable right to recover damage to property.[2] Accordingly, the general prescriptive period for offenses and quasi offenses contained in LSA-C.C. art. 3536 is applicable. This article with its companion, LSA-C.C. art. 3537, provides a one year prescriptive period running from the time the damage is sustained. There is no provision which extends the one year period when the claim for property damages is inherited under LSA-C.C. art. 2315. Therefore, plaintiff's claim, whether it be personal or inherited, began to prescribe on the date the property was stolen (February 22, 1974) and expired one year later, unless some interruption or suspension of that period occurred.
Plaintiff argues that the prescriptive period was suspended, relying on the doctrine of contra non valentem.
The most often cited case recognizing the existence of this doctrine in Louisiana is Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598 (1916). In discussing Hyman, Judge Sartain of this Court stated in Dagenhart v. Robertson Truck Lines, Inc., 230 So.2d 916, 918 (La.App. 1st Cir. 1970):
"The case of Hyman v. Hibernia Bank & Trust Company, 139 La. 411, 71 So. 598 (La.Sup.Ct., 1916) contains an exhaustive review of the Louisiana cases where the doctrine of contra non valentem was considered. The doctrine itself is of Roman origin and is an exception to the general rules of prescription. Simply stated it means that prescription does not run against a person unable to bring an action or a person who for some reason is unable to act. The equitable nature of the circumstances in each individual case has determined its applicability. Louisiana has on numerous occasions recognized and applied this maxim but has done so in a limited and restricted sense. See also 32 Tul.L.Rev. 783, 784.
"The leading authority on this subject is the Hyman case. Undoubtedly the Supreme Court felt it necessary on this occasion to deal exhaustively with the subject because there was language in Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175 (La.Sup.Ct., 1900) to the effect that the doctrine itself was not recognized in this state.
"The Hyman decision carefully analyzes Louisiana jurisprudence on the subject and in each and every case therein cited as applicable two primary factors have emerged. One is that prescription does not begin to run until the cause of action had manifested itself with sufficient certainty to be susceptible of proof in a court of law. Jones v. Texas & P. Ry. Co., 125 La. 542, 51 So. 582 (La.Sup.Ct., 1910) and Woodward-Wight v. Engel Land & Lumber Co., 123 La. 1093, 49 So. 719 (La.Sup.Ct., 1909). These two cases followed the Cox decision. On this same point is the later case of Perrin v. Rodriguez, La.App., 153 So. 555 (Orl.App., 1934) involving a medical malpractice suit which held that it was not until the plaintiff had changed physicians that he learned that his trouble was due to his former physician's (Rodriguez) negligence.
"The other factor which has justified the application of the doctrine of contra non valentem involved situations where the defendant had knowingly concealed information from the plaintiff or had through his own conduct misled or lulled the plaintiff into inaction. Martin v. Jennings, 10 La.Ann. 553 (1855); and Boyle v. Mann, 4 La.Ann. 170 (1849). * * *" (footnote omitted)
Cases subsequent to Hyman stress the need for some concealment or misleading *1222 action as a requirement for plaintiff to avail himself of the benefits of the doctrine. See e. g. McGuire v. Monroe Scrap Material Co., 189 La. 573, 180 So. 413 (1938); Favors v. Southern Industries, Inc., 344 So.2d 693 (La.App. 1st Cir. 1977); Dagenhart, supra; Perrin v. Rodriguez, 153 So. 555 (La.App. Orl.Cir. 1934).
In Aegis Insurance Co. v. Delta Fire & Casualty Co., 99 So.2d 767, 787 (La.App. 1st Cir. 1957) it was stated:
"In summary, the cause of action herein was created by the wrongful act of the tortfeasor. Prescription, which would ordinarily have run against the owner's rights to recover damages commencing with the date of the wrongful act, does not do so when as here it has been suspended by the active fraud and concealment of the whereabouts of the property, whether by the tortfeasor or another. The basic reason that prescription was initially suspended, even before the negligent act creating the present cause of action in tort, was because the owner could not enforce his rights concerning his property because its whereabouts had been actively concealed from him. This basic reason for the application of the `contra non' doctrine is not affected by the circumstance that the stolen property is damaged or destroyed by the negligent act of yet a third person, for the whereabouts of the property still remain unknown to the owner through the fraud and active concealment of another, the original thief. Prescription does not commence running against his action to recover for damage to his concealed property until he actually learns of its location or until he should have done so by the exercise of reasonable diligence." (emphasis supplied)
In the instant case, Scianna, the alleged murderer and thief, actively sought to conceal his connection with the crime. In fact, Scianna was rather successful, with more than two years elapsing before suspicion fell upon him and he was indicted for the crime. Under these circumstances, the application of contra non valentem to suspend the one year prescriptive period is justified.
Regarding the State, it is true that the State did not conceal the action or mislead the plaintiff. Rather, the State, through its law enforcement agencies, actively sought the identity of the murderer/tortfeasor. Nonetheless, until the identity of the murderer was made known and his status as a prison inmate established, plaintiff had no possible way of knowing that a cause of action existed in her favor against the State. Prior to that time, plaintiff's cause of action against the State had not manifested itself with sufficient certainty to be susceptible of proof in a court of law. Accordingly, the concealment and fraud of the murderer allows plaintiff the benefit of contra non valentem even in her claim against the State. Aegis, supra. See also Hyman, supra.
The record indicates that plaintiff exercised due diligence to discover the identity of her parents' murderer by cooperating with the law enforcement authorities. Plaintiff acted promptly to assert her cause of action once she learned the identity of the alleged murderer.
We find, therefore, that plaintiffs' claim for damage to property had not prescribed.

III.
Finally, plaintiff contends that the trial court erred in finding: that the time limitation applicable to the wrongful death action is set forth in LSA-C.C. art. 2315, rather than LSA-C.C. art. 3536; that this time limit is peremption rather than prescription; and that plaintiff's action had perempted. Plaintiff again urges the doctrine of contra non valentem.
The pertinent provision of LSA-C.C. art. 2315 provides:
"The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of: (1) the surviving spouse and child or children of the deceased, or either such spouse or such *1223 child or children; (2) the surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving; and (3) the surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child or parent surviving. The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased. * * *"
This provision contemplates two separate and distinct actions: first, the survival of an action for damages that an injured person would have had, had he lived, in favor of certain designated beneficiaries; second, a wrongful death action, in favor of the same beneficiaries, for the damages that they sustained as a result of the death. Succession of Roux v. Guidry, 182 So.2d 109 (La.App. 4th Cir. 1966), writ refused 248 La. 1106, 184 So.2d 27 (1966).
The delay within which the "survival" action must be exercised is provided in LSA-C.C. art. 2315, i. e. "the right . . shall survive for a period of one year from the death of the deceased." Since the article which creates the survival action also provides the time period within which the right is to be executed, the time period is one of peremption. Guillory v. Avoyelles Railway Co., 104 La. 11, 28 So. 899 (1900). After the peremption period has expired no cause of action or substantive right exists. Ancor v. Belden Concrete Products, Inc., 260 La. 372, 256 So.2d 122 (1971). Indeed, the survival action has been held subject to peremption rather than prescription. Gabriel v. United Theatres, Inc., 221 La. 219, 59 So.2d 127 (1952); Romero v. Sims, 68 So.2d 154 (La.App. 1st Cir. 1953); Miller v. American Mutual Liability Insurance Co., 42 So.2d 328 (La.App. 1st Cir. 1949).
However, the instant case is a wrongful death action under LSA-C.C. art. 2315. The appropriate time limitation for enforcement of a wrongful death action and the nature of this time limit (i. e. prescription or peremption) are not clearly settled. There are at least four discernible approaches employed by the courts. See Johnson, Death on the Callais Coach, 37 La.Law Rev. 1 (1976). Some cases have held that the wrongful death action is governed by the time limit contained in LSA-C.C. art. 2315 and that this time is peremption not subject to interruption or suspension. Goodwin v. Bodcaw Lumber Co., 109 La. 1050, 34 So. 74 (1902); Succession of Roux v. Guidry, supra; Matthews v. Kansas City Southern Railway Co., 10 La.App. 382, 120 So. 907 (La.App. 2nd Cir. 1929). Other cases have held that the time limit is peremption, but subject to interruption. Smith v. Monroe Grocery Co., 171 So. 167 (La.App. 2nd Cir. 1936). See Thompson v. Gallien, 127 F.2d 664 (5th Cir. 1942). Still other cases call the time limit a "prescriptive or peremptive period" and treat the two concepts as functionally indistinguishable. Wick v. Sellers, 309 So.2d 909 (La. App. 3rd Cir. 1975); Marshall v. Southern Farm Bureau Casualty Co., 204 So.2d 665 (La.App. 3rd Cir. 1967), writ refused 251 La. 860, 206 So.2d 711 (1967). Finally, there is a distinct line of cases which hold that the applicable time limitation for the wrongful death action is the prescriptive period of LSA-C.C. art. 3536. Trahan v. Liberty Mutual Ins. Co., 314 So.2d 350 (La.1975); Stephenson v. New Orleans Ry. & Light Co., 165 La. 132, 115 So. 412 (1927); Favors v. Southern Industries Inc., supra; Sansone v. Louisiana Power & Light Co., 164 So.2d 151 (La.App. 1st Cir. 1964); Flowers v. Pugh, 51 So.2d 136 (La.App. 1st Cir. 1951). Because of this wide range of decisions, it is not possible to discern a trend of jurisprudence constante on the issue as defendant contends exists. This court must therefore search for the most logical and well reasoned view of the article.
The wrongful death portion of LSA-C.C. art. 2315 does not expressly specify a one year limitation. This one year limitation, which undoubtedly is peremption, is contained in the portion of the article dealing with the survival action. See La. Acts 1855, No. 223. In Matthews v. Kansas City Southern Railway Co., supra, the court seized on the word "also" in the sentence on wrongful death, and found that this meant *1224 that the wrongful death action was based on the same conditions as the survival action and was subject to the same one year limitation. The court, however, failed to see that the two actions are separate and distinct (either one may arise without the other), and that it might be quite reasonable to provide different time limitations on enforcement of the actions. The survival action provision, allowing the action to survive for one year following the injured party's death, has the effect of extending the normal one year period of LSA-C.C. art. 3536 governing the injured party's personal action because that victim died before his right to damages was fully enforced. The wrongful death action, however, is not of the same nature; the death itself is the injury and the named beneficiaries are themselves the victims.
We believe the better view of the word "also" in the wrongful death provision is that it means "in addition to" the right previously granted, rather than "together with" as interpreted by the court in Matthews. Under this view, the fact that the wrongful death provision does not provide its own time limitation leads to the conclusion that the action must be governed by the general prescriptive period for offenses and quasi offenses contained in LSA-C.C. art. 3536, i. e. a one year period subject to interruption and suspension from the time the damage is sustained. This period began on the date of the murders, February 22, 1974, and expired one year later, unless some interruption or suspension of that period occurred.
As in the above discussion concerning plaintiff's claim for damage to property, prescription on the wrongful death claim was also suspended based on the doctrine of contra non valentem.
Accordingly, the trial court erred in sustaining the exception of prescription and/or peremption, and in dismissing plaintiff's suit.
For the above reasons, the judgment appealed is reversed and this suit is remanded to the trial court for trial on the merits. Costs to await a final disposition of the case.
REVERSED AND REMANDED.
NOTES
[1] No prescription runs against a person unable to bring an action.
[2] The only prescriptive period in LSA-C.C. art. 2315 is contained in the article's third paragraph which does not apply to damage to property.