Mary AYO, Widow of Murphy Ayo, et al., Plaintiffs-Appellants,

v.

JOHNS-MANVILLE SALES CORPORATION, et al., Defendants-Appellees.

No. 85–3134
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Sept. 23, 1985.

M.H. Gertler, Cheryl A. Denney, New Orleans, La., for plaintiffs-appellants.

Windhorst, Pastorek & Gaudry, Keith G. Contreary, Gretna, La., for Celotex Corp.

Christovich & Kearney, Michael M. Christovich, New Orleans, La., for Armstrong World Industries.

Porteous, Hainkel, Johnson & Sarpy, James S. Thompson, New Orleans, La., for Pittsburg Corning Corp.

Watson, Blanche, Wilson & Posner, Felix R. Weill, Mary H. Thompson, Baton Rouge, La., for Nicolet, Inc.

Bryan, Nelson, Allen & Schroeder, Maria I. O'B Stephenson, New Orleans, La., for Rock Wool Mfg. Co.

Bienvenu, Foster, Ryan & O'Bannon, William L. Brockman, New Orleans, La., for GAF Corp.

Michael T. Cali, John C. Reynolds, New Orleans, La., for Owens Corning Fiberglas Corp.

McGlinchey, Stafford, Mintz, Cellini & Lang, J. Michael Johnson, Linda S. Harang, New Orleans, La., for Combustion Engineering, Inc.

William C. Kaufman, III, Baton Rouge, La., for Fibreboard Corp. &/or Pabco Corp.

O'Keefe, O'Keefe & Berrigan, Stephen M. Bernstein, New Orleans, La., for Forty Eight Insulations, Inc.

Ethel H. Cohen, Robert E. Kerrigan, Jr., New Orleans, La., for Southern Textile Corp.

Chaffe, McCall, Phillips, Toler & Sarpy, Robert S. Rooth, Jonathan C. McCall, New Orleans, La., for Owens Illinois, Inc.

Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Kathleen M. Overcash, Bert Wilson, Lafayette, La., for Keene Corp.

Landry, Watkins & Bonin, Jacob D. Landry, New Iberia, La., for Flintkote Corp.

Montgomery, Barnett, Brown & Read, Sylvia Landry, New Orleans, La., for Raymark Industries, Inc.

Leach & Paysse, Michael A. Britt, New Orleans, La., for Atlas Turner, Inc.

Lugenbuhl, Larzelere & Ellefson, Vance E. Ellefson, Anthony J. Staines, New Orleans, La., for Eagle Picher.

Before REAVLEY, TATE, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

After subjecting himself to the dual hazards of cigarette smoking and asbestos work for most of his adult life, Murphy Ayo died from carcinoma of the lung on July 2, 1977, at the age of forty-eight. Plaintiff-Appellant Mary Ayo on behalf of herself and her children brought this diversity suit against Johns-Manville Sales Corporation and numerous other asbestos manufacturers, distributors, and sellers on July 28, 1983, alleging that the defendants caused or contributed to her husband's and her children's father's death. The complaint charged two causes of action: (1) a survival action and (2) a wrongful death action. The district court held that, under Louisiana law, the survival action had been perempted and the wrongful death action had been prescribed; therefore, the court granted summary judgment in favor of all the defendants. Plaintiffs have appealed. Concluding that the district court correctly determined that summary judgment was proper, we affirm.

■ Before discussing the facts and legal issues involved in the case, we pause briefly to note the standard of review for the appeal of a summary judgment. The standard of review at the appellate level remains the same as at the trial level. *Simon v. United States*, 711 F.2d 740 (5th Cir.1983). A summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *United States Steel Corp. v. Darby*, 516 F.2d 961 (5th Cir.1975); Fed.R.Civ.P. 56(c). On appeal the record must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam); *National Hygenics, Inc. v. Southern Farm Bureau Life Insurance Co.*, 707 F.2d 183 (5th Cir.1983).

## I. FACTUAL AND PROCEDURAL BACKGROUND

We now turn to the facts presented by the summary judgment evidence. Murphy Ayo died on July 2, 1977, three months after discovering he had lung cancer. Although Mrs. Ayo never inquired at the time of her husband's death as to the cause of his lung cancer, she assumed that his habit of smoking two packs of cigarettes per day for thirty years caused the cancer. Mrs. Ayo apparently did not consider that her husband's lung cancer could have been occupationally related until his brother, also

an asbestos insulation worker, died in 1982 of lung cancer. At that time the brother's widow mentioned that she had sought legal advice concerning her husband's death, and she urged Mrs. Ayo to do the same.

In late 1982 Mrs. Ayo contacted a law firm about her husband's death. After reviewing her husband's medical records, obtained for her by the law firm in February 1983, Mrs. Ayo realized for the first time that her husband's occupation may have played a role in his death. She then filed this suit on July 28, 1983, over six years after her husband's death.

The summary judgment evidence also included the deposition of Murphy Ayo's physician, Dr. Horace Baltz. Dr. Baltz's deposition does not reveal that he ever told Mrs. Ayo that her husband's death was caused by cigarette smoking. He also testified that while he never told Mrs. Ayo that her husband's cancer could have been caused by exposure to asbestos, he did discuss with her the fact that as an asbestos worker her husband worked in an environment highly contaminated with dangerous airborne particles.[1] Additionally, he testified that he told Mrs. Ayo that her husband's

1. Dr. Baltz testified as follows:

Q Now, I think it's obvious from your testimony today that you had quite a number of conversations with Mr. Ayo over the period of treatment of him, in which you discussed both the type of problems he was suffering from and the different factors that contributed to his, both his smoking and occupation.
Do you recall at any time having a conversation with his wife—and this is at any time during the treatment—regarding the fact that his problems could be contributed to by both his work as an asbestos worker and by his smoking?
A Had a conversation with her subsequent to his death about the possibility, if any, of his having been an asbestos worker.
Q Does that indicate that you do not remember having any conversation with her, or you did not have any prior to his death?
A I know we talked about the incriminating factors of smoking, and I would certainly feel reasonably certain in saying that we had discussed the fact that he was in an environment that's highly contaminated with airborne particles that are known to be injurious in occupational exposure.
Q And would you have used the term "asbestosis"?
A Yes, because I say the same thing to men who work in grain elevators, and there are a lot of these in this city that come down with pneumoconiosis because of the hypersensitive lung conditions because of failure to wear their masks, and they take them off, et cetera.
Q Would these suggestions have been perhaps during the hospitalization or maybe during your own treatment of Mr. Ayo in your office?
A Well, certainly, the only time they were discussed was at the time of the patient being alive, because most of my treatment of him between April and his death in July were hospital treatments. I only saw him

post-hospitalization on July 7th and June 10th and the 14th.
Q And, Doctor, you testified today again, you did not at the time feel that asbestosis was—
A I don't think I had any evidence the man had asbestosis.
Q But that was something you took into consideration and did studies to rule out, I would assume?
A Well, the only way you can rule it out is to take a biopsy of the lung, you know, get the lung tissue. Not having the report of the pathologist in my hand, I don't know whether the specimens at the time of the April admission reflected any lung tissue in the adjacent peripheral of the biopsy.
I would think there were only the tumor, if the tumor was in the center and there was lung tissue that showed spicules of asbestosis. I would say yes, the man definitely had evidence of asbestosis. But, I can't say that without—
Q Okay, But, it was a concern of—
A It was a concern, yes.
Q During the course of the treatment, that was a possibility that had to be addressed?
A Yes.
Q And do you ever remember relating this prior to Mr. Ayo's death—do you ever remember discussing that in the presence of his wife, that asbestosis was a consideration?
A As a co-existent disease or as a cause of the fact?
Q Just as a possibility that he may have this disease.
A I would think that we probably did. Now, let me qualify that. I'm not sure that we said we should check for that, because, remember, here was a man who is critically ill with a malignancy, bronchitis and restrictive breathing, and that became a lesser priority, and, really, an academic curiosity at the time when his life was obviously in the balance of the terminal illness. It's not an academic one now, but it was then.
Q So you would say that during the time he was in the hospital, either at some point

status as an asbestos worker could have contributed to the problems he was suffering. After reviewing the summary judgment evidence, the district court held that Mr. Ayo's death was sufficient to put the plaintiffs on notice of their two causes of action. Since plaintiffs did not bring their suit for over six years after being placed on notice of the causes of action, the court held that the actions were barred by the applicable one year prescription and peremption periods of Louisiana law.

## II. SURVIVAL AND WRONGFUL DEATH ACTIONS

Plaintiffs assert that the district court erred in finding that they were placed on notice of their causes of action when Mr. Ayo died. Rather they contend that they were not placed on notice until February 1983 when Mrs. Ayo reviewed the medical records with her attorneys and thus this action was timely instituted when it was filed a short time later on July 28, 1983. In order to understand the plaintiffs' contentions, a discussion of their two causes of action and the applicable Louisiana limitation provisions is necessary.

■ Under Louisiana law a decedent's statutorily designated beneficiaries have two possible causes of action against a tortfeasor who causes the death of the decedent. A beneficiary may bring a survival action, i.e., an action for damages the injured person would have had, had he lived. A beneficiary may also bring a wrongful death action, i.e., an action for the damages the beneficiaries sustained as a result of the death. The two causes of action are separate and distinct causes of action. *Guidry v. Theriot*, 377 So.2d 319, 322 (La.1979). The Louisiana Civil Code sets forth this recovery scheme and, at the same time, sets forth the applicable limitations period for a survival action:

(1) The right to recover all other damages caused by an offense or quasi-offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of:

(a) The surviving spouse and child or children of the deceased, or either such spouse or such child or children;

(b) The surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving; and

(c) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving.

(2) The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased.

La.Civ.Code Ann. art. 2315 D (West Supp. 1985). As the statute expressly states, the period of limitations for a survival action is one year. While the statute does not state the period of limitations for a wrongful death action, that period is also one year. La.Civ.Code Ann. art. 3492 (West Supp. 1985).[2]

■ Louisiana law provides two methods for barring an action as being untimely: (1) prescription and (2) peremption. Whether a particular time period is prescriptive or peremptive is a matter determined by the Louisiana courts. The major factor used by a court in determining whether a statute is prescriptive or peremptive is whether the statute creating the cause of action also provides a time period in which the action must be asserted. *Pounds v. Schori*, 377 So.2d 1195 (La.1979). When the statute

---

during the first or second hospitalization, Mrs. Ayo was made aware of the fact that he was an asbestos worker could have contributed to the problems he was suffering? A Coincidentally, yes.
Deposition of Dr. Horace J. Baltz, 32–37.

2. Article 3492 became effective on January 1, 1984. At the time Mrs. Ayo filed this suit article 3536 was the pertinent statute. The enactment

of article 3492 did not change the prior law. *See* La.Civ.Code Ann. article 4292 comment (a) (West Supp.1985).

Both article 3492 and article 3536 provide a one year prescription period for delictual actions. Delictual actions include: intentional misconduct, negligence, abuse of right, and liability without negligence. *Langlois v. Allied Chemical Corp.*, 258 La. 1067, 249 So.2d 133 (1971).

creating the cause of action provides the time period in which the action must be asserted, the courts are likely to find the time period is peremptive; when the statute creating the cause of action does not provide a time period, the courts are likely to find the limitations period is prescriptive. *Id.* Thus, the courts have held that the one year period of limitations for a survival action is peremptive, *McClendon v. State Department of Corrections,* 357 So.2d 1218 (La.Ct.App.1978), and that the one year period of limitations for the wrongful death action is prescriptive. *Guidry v. Theriot,* 377 So.2d at 326.

When prescription applies, the prescriptive period does not begin to run until the plaintiff has actual or constructive knowledge of the facts which would entitle him to bring suit. *Jones v. Philco-Ford Corp.,* 441 So.2d 1251 (La.Ct.App.1983), *original opinion reinstated,* 452 So.2d 370 (La.Ct. App.1984); *Lynch v. Foster,* 376 So.2d 342 (La.Ct.App.), *writ denied,* 378 So.2d 433 (La.1979). This is the Louisiana doctrine of *contra non valentem agere non currit prescriptio,* that is, no prescription runs against a person unable to bring an action. When peremption applies, the statutory period is not subject to interruption. *McClendon v. State Department of Corrections,* 357 So.2d 1218 (La.Ct.App.1978); *Succession of Roux v. Guidry,* 182 So.2d 109 (La.Ct.App.1966). The plaintiffs argue that the wrongful death action is not prescribed due to the doctrine of *contra non valentem* and that the survival action is not perempted because, under their interpretation of Louisiana law, the peremption period is also subject to interruption and was properly interrupted in this case.

A. Peremption of the Survival Action

■ The district court granted the defendant's motion for summary judgment on the survival action on the ground that the one year peremption period is not subject to interruption. We agree with the district court's holding. *See, e.g., Pounds v. Schori,* 377 So.2d 1195, 1199 (La.1979). Whether the plaintiffs reasonably could have discovered their cause of action is not an issue when a peremptive time period applies. Plaintiffs strongly assert, however, that a peremptive time period is subject to interruption or suspension in certain cases; therefore, plaintiffs would have us apply the theory of *contra non valentem* to their survival action.

As support for their argument plaintiffs rely on *Giroir v. South Louisiana Medical Center,* 453 So.2d 949 (La.Ct.App.) *writs granted,* 458 So.2d 108 (La.1984). The italicized portion of the following quote from *Giroir* provides the basis for plaintiffs' argument:

> La.R.S. 9:5628 provides (in part) that claims against physicians and hospitals must be filed within one year of the negligent act or within one year from the date of discovery of such act. Plaintiffs allege that they did not learn of the negligent act until some time after Mrs. Giroir's death and that the burden is on the defendant to prove exactly when this knowledge was acquired.

> This argument has no merit. The general rule is that when it appears from the face of the pleadings (as it does in this case) that a claim is not filed timely, the burden is on the plaintiff to show an interruption or suspension of prescription. *Although here we are dealing with peremption rather than prescription, we conclude the same reasoning applies, i.e., plaintiffs must show at what point they learned of the negligent act in order to prove that the peremptive period began running at some point other than at Mrs. Giroir's death. There is no such evidence in the record.*

Further, it has been held that La.R.S. 9:5628, which makes no specific provisions for wrongful death or survival actions, is a general statute. As such, it conflicts with art. 2315, which is a special statute providing a one-year time period for survival actions. The general rule is that in cases of conflict, the special statute prevails. Therefore the survival action is not governed by the time period

provided in La.R.S. 9:5628, but by that provided in art. 2315.

453 So.2d at 954–55 (citations omitted) (emphasis added). While the italicized portion of the quotation, standing alone, would provide support for the plaintiffs' contention, when the entire passage is read, no support for the plaintiffs' contention exists. When the *Giroir* court states that they "are dealing with peremption," they are referring to the peremptive period of the medical malpractice statute. When the court goes on to state that the time for beginning the running of the peremptive time period is the time of the learning of the negligence, the court is obviously still referring to the medical malpractice statute and not to any other peremption period. The medical malpractice statute specifically provides that the peremptive period will not begin to run until the negligent act occurs or is discovered.

In light of the substantial Louisiana authority in support of the proposition that peremptive periods are not subject to interruption or suspension, we decline to adopt plaintiffs' unsupported contention. The plaintiffs' argument appears to be grounded on a misreading of *Giroir* and goes against the pronouncements of the state's highest court. The district court correctly granted defendant's motion for summary judgment on plaintiffs' survival action.

## B. Prescription of the Wrongful Death Action

■ The plaintiffs also assert that the district court erred in entering a summary judgment against them on their wrongful death claim. The district court held that the plaintiffs' cause of action had prescribed. Mrs. Ayo and her children argue that the doctrine of *contra non valentem* should be applied so that the one year prescriptive period would not have commenced to run until February 1983.[3]

---

**3.** While the record does not reveal whether Mrs. Ayo's children are minors or were minors during any of the period between Mr. Ayo's death and the filing of the suit, it is clear under Louisiana law that the one year liberative prescription runs against minors. La.Civ.Code

■ Under the doctrine of *contra non valentem*, prescription will not run against a person who is unable to bring an action or who for some reason is unable to act. *Dagenhart v. Robertson Truck Lines, Inc.*, 230 So.2d 916, 918 (La.Ct.App.1970). The Louisiana courts have outlined four situations where the doctrine may be applied: (1) where there was some legal cause which prevented the courts from acting on plaintiff's claim; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from acting; (3) where the debtor has done some act to prevent the creditor from availing himself of his claim or where the defendant has knowingly concealed information from the plaintiff or has through his own conduct misled or lulled the plaintiff into inaction; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, although his ignorance is not induced by the defendant. *Corsey v. State Department of Corrections*, 375 So.2d 1319 (La.1979); *Nathan v. Carter*, 372 So.2d 560 (La.1979). The plaintiffs rely on the fourth category as the basis for the argument that prescription has not run against them on their wrongful death action.

■ Louisiana law does not require a plaintiff to have actual notice of the cause of action; constructive notice is sufficient.

Whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of every thing to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription.

*Cartwright v. Chrysler Corporation*, 255 La. 597, 232 So.2d 285, 287 (1970) (footnote omitted). When an action appears to have prescribed on the face of the petition, the plaintiff bears the burden of establishing

---

Ann. art. 3541 (West 1953) (current version at La.Civ.Code Ann. art. 3468 (West Supp.1985)); *Colley v. Canal Bank & Trust Co.*, 64 F.Supp. 1016, 1020 (E.D.La.1946), *aff'd*, 159 F.2d 153 (5th Cir.1947).

facts which would interrupt or suspend prescription. *Yarbrough v. Louisiana Cement Company,* 370 So.2d 602 (La.Ct. App.), *writ denied,* 373 So.2d 531 (La.1979); *Marcel v. Hospital Corp. of the Sisters of Saint Joseph,* 322 So.2d 302 (La.Ct.App. 1975).

We find that the district court was correct in concluding that, under Louisiana law, the plaintiffs had not raised a factual issue as to whether the cause of action was reasonably knowable by Mrs. Ayo. *See Henderson v. Todd Shipyards,* 462 So.2d 242 (La.Ct.App.1984), *writ denied,* 462 So.2d 1266 (La.1985). In *Henderson v. Todd Shipyards* the identical issue was raised. The widow of an asbestos worker who died of lung cancer filed a wrongful death action over ten years after her husband's death. The plaintiff relied upon the doctrine of *contra non valentem.* However, she made no showing that she had inquired into the cause of her husband's death but instead had simply rested on the assumption that his death had been caused by cigarette smoking. The Louisiana Court of Appeals affirmed the trial court's dismissal of the plaintiff's wrongful death claim because she had not presented sufficient evidence to meet her burden of proof.

The summary judgment evidence in the instant case shows that Mrs. Ayo knew her husband was an asbestos worker and that Dr. Baltz mentioned to her that exposure to asbestos could be harmful. At no point did Dr. Baltz tell Mrs. Ayo that he had ruled out asbestos as a possible cause of her husband's cancer or that cigarette smoking was the cause of the cancer. The summary judgment evidence further shows that Mrs. Ayo took no steps to determine whether her husband's workplace could have played any role in causing his cancer although Dr. Baltz had indicated to her that her husband's employment as an asbestos worker could have been a factor in the problems from which he suffered. Thus, under the clear holding of *Henderson v. Todd Shipyards,* Mr. Ayo's death was sufficient to put plaintiffs on notice of their wrongful death cause of action.[4]

We find that plaintiffs also failed to meet their burden of showing that they could not have reasonably known of the wrongful death cause of action; therefore, the district court was correct in granting summary judgment in favor of the defendants.

AFFIRMED.

---

4. We realize that the result in this case appears harsh in light of the evidence indicating that Mrs. Ayo did not comprehend until late 1982 any possible connection between her husband's cancer and his occupational exposure to asbestos. However, as we have noted the Louisiana Court of Appeals has held, on identical facts, that the period of prescription will not be interrupted when a decedent's beneficiary fails to inquire into the cause of death. *Henderson v. Todd Shipyards.* We also realize that other jurisdictions might find on similar facts that the applicable limitations period had been interrupted, *see e.g., Mann v. A.H. Robins Company, Inc.,* 741 F.2d 79 (5th Cir.1984) (applying Texas law and holding that plaintiff's knowledge that she had endometriosis eight years before filing suit but only learned that the Dalkon Shield caused her injuries within the two year limitations period preceding suit presented jury question as to when her cause of action accrued); *Abernathy v. Smith,* 17 Ariz.App. 363, 498 P.2d 175 (1972) (holding that, in a medical malpractice action, plaintiff has to know or should have known of defendant's *negligence* before the statute starts to run); *Owens v. Brochner,* 172 Colo. 525, 474 P.2d 603 (1970) (holding that, in a medical malpractice action, plaintiff has to know or should have known of defendant's *negligence* before the statute starts to run); *Yoshizaki v. Hilo Hospital,* 50 Hawaii 150, 433 P.2d 220 (1967) (holding that, in a medical malpractice action, plaintiff has to know or should have known of defendant's *negligence* before the statute starts to run); *Ohler v. Tacoma General Hospital,* 92 Wash.2d 507, 598 P.2d 1358 (1979) (en banc) (holding that plaintiff who knew many years before she brought suit that too much oxygen in her incubator caused her blindness but did not know until soon before she filed suit that the hospital had breached its duty presented jury question as to when the statute began to run); and that the Louisiana courts reasonably could hold that inquiry into the cause of death is not a requirement for applying *contra non valentem.* Nevertheless, when a federal court exercises diversity jurisdiction, the court must apply the law of the forum state, *Erie Railroad Company v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and when the state court has spoken as clearly as has the court in *Henderson v. Todd Shipyards,* we are bound to follow that ruling.