**FIRST NATIONAL BANK OF COLUMBUS, COLUMBUS, GEORGIA, Plaintiff,**

v.

**PELICAN HOMESTEAD AND SAVINGS ASSOCIATION, Formerly First Financial Louisiana Savings & Loan Association, Defendant–Third Party Plaintiff–Appellee,**

v.

**Robert F. FARMIGONI, Third Party Defendant–Appellant.**

**No. 88–3171.**

United States Court of Appeals, Fifth Circuit.

April 13, 1989.

Archie Creech, Frank G. DeSalvo, New Orleans, La., for appellant.

Alan J. Robert, Gonzales, La., Monica T. Surprenant, Metairie, La., for appellee.

Philip A. Franco, New Orleans, La., for Noel, et al.

Judy L. Burnthorn, William E. Wright, Jr., New Orleans, La., for Pelican Homestead & Sav. Assoc, (formerly FFLSLA).

Before THORNBERRY, GEE and POLITZ, Circuit Judges.

PER CURIAM:

The plaintiff First National Bank of Columbus ("FNBC") originally sued the defendant/third party plaintiff/appellee Pelican Homestead and Savings Association's predecessor corporation, First Financial of Louisiana Savings and Loan Association ("Pelican" [1]) for payment on a letter of credit Pelican issued in favor of FNBC. Pelican later filed a third party complaint against one of its loan officers, Robert Farmigoni, alleging that Farmigoni exceeded his authority when he issued the letter of credit.

FNBC settled its claim against Pelican. Pelican then moved for summary judgment against Farmigoni. The district court granted Pelican's motion, from which Farmigoni now appeals. We hold that the district court erred in granting Pelican's motion for summary judgment and remand for further proceedings.

I. *Facts.*

Loretta Lustig, in her capacity as President and sole shareholder of Double Development, Inc., obtained several loans from Pelican. In early 1986, some of these loans were past due. According to Farmigoni, Pelican wanted these loans to be made current because bank commissioners were reviewing Pelican's records during this period. Farmigoni testified that on several occasions, he and Noel, the President and Chairman of the Board of Pelican ("the Board"), discussed the possibility of issuing Double Development a letter of credit, which would enable Double Development to obtain a loan, the proceeds of which could be used to bring its Pelican loans current. Farmigoni further testified that he and Noel met with Lustig concerning her delinquent loan payments and that Noel was aware in advance that Farmigoni was going to issue the letter of credit.

In April 1986, Farmigoni, in his capacity as Senior Lending Officer for Pelican, is-

sued Double Development a letter of credit for $1,550,000. Under the terms of the letter of credit, Pelican was obligated to pay up to $1,550,000 to FNBC for the account of Double Development, Inc. if FNBC presented sight drafts under the letter of credit. In April 1986, Lustig, acting on behalf of Double Development, borrowed $1,550,000 from FNBC, using the letter of credit as collateral. Lustig used over $300,000 of the loan from FNBC to bring her Pelican loans up-to-date.

Farmigoni ceased working at Pelican in June 1986. Pelican alleges that after Farmigoni left, bank officials learned of the letter of credit Farmigoni had issued to Double Development. Noel informed FNBC that the letter of credit was issued without approval or authority and in violation of Pelican's lending policy. FNBC then presented Pelican with a sight draft for $1,550,000 drawn on the letter of credit. Pelican refused to honor the letter of credit. FNBC brought suit to enforce the terms of the letter. Pelican filed a third party action against Farmigoni on the grounds that he lacked the authority to issue the letter of credit. Pelican later settled with FNBC for $962,500. Pelican then filed a motion for summary judgment against Farmigoni.

In support of its motion for summary judgment, Pelican submitted (1) copies of its approval and ratification procedures for commercial loans; (2) an affidavit from Noel, stating that the commercial loan procedures applied to letters of credit and that Farmigoni failed to follow these procedures when he issued Double Development's letter of credit; (3) a copy of the letter of credit; (4) letters from all the members of the Board stating that Farmigoni never submitted the letter of credit for ratification or approval; (5) a copy of the settlement agreement between FNBC and Pelican which required Pelican to pay FNBC $962,500; and (6) other evidence not necessary for disposition of this appeal.

In defense to Pelican's motion for summary judgment, Farmigoni submitted ex-

---

**1.** In order to avoid confusion in this opinion, we have referred to the bank as Pelican even though this was not the name of the bank at the time the events giving rise to this suit occurred.

cerpts from his own deposition including statements that (1) Board minutes from 1983 or 1984 gave him limitless authority to issue letters of credit; and (2) Farmigoni and Noel discussed the letter of credit and that Noel knew in advance that Farmigoni was going to issue the letter of credit.

The district court granted Pelican's motion and ordered Farmigoni to pay Pelican $962,500.

## II. *Standard of Review.*

■■■ In reviewing the district court's grant of summary judgment, the standard of review at the appellate level remains the same as the trial court level. *Ayo v. Johns–Manville Sales Corp.,* 771 F.2d 902, 904 (5th Cir.1985). The pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id. See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988); Fed.R. Civ.P. 56(c). Under this standard, fact questions are considered with deference to the nonmovant. *Reid v. State Farm Mutual Automobile Insurance, Co.,* 784 F.2d 577, 578 (5th Cir.1986).

## III. *Appropriateness of Summary Judgment.*

■■■ Under Louisiana law, Farmigoni is liable to Pelican if he negligently or in bad faith exceeded his authority when issuing the letter of credit. *See Naulty v. OUPAC, Inc.,* 448 So.2d 1322, 1328 (La.App. 5th Cir.1984). The district court's summary judgment in favor of Pelican was, therefore, proper if when considering the evidence in the light most favorable to Farmigoni, there is no genuine issue of material fact whether Farmigoni had the authority to issue the letter of credit.

Pelican urges that summary judgment is appropriate because its commercial loan procedures required Farmigoni to obtain authorization and ratification by the full Board. It is undisputed that Farmigoni did not obtain ratification and authorization by the full Board.

### A. *Applicability of commercial loan procedures to letters of credit.*

Pelican urges that its commercial loan procedures requiring ratification and authorization by the Board of loans over $300,000 apply to letters of credit. In support, Pelican submitted a copy of its commercial loan procedures and an affidavit from Noel stating that these procedures applied to letters of credit.

Pelican's evidence does not conclusively establish that Farmigoni was required to obtain ratification and authorization by the Board before issuing the letter of credit. Nowhere do the commercial loan procedures mention letters of credit. This is particularly noteworthy given that letters of credit and loans have separate and distinct characteristics. Letters of credit are contingent liabilities while loans are direct liabilities. Furthermore, Pelican did not submit any documents describing the procedure for letters of credit nor did it demonstrate that on other occasions it has applied the commercial loan ratification and authorization requirements to letters of credit. Pelican never introduced evidence indicating that Farmigoni had been specifically instructed to seek ratification and authorization for letters of credit. Lastly, although Pelican deposed Farmigoni, the bank never mentioned or questioned Farmigoni about the documents governing commercial loan procedures. We find that a genuine issue of material fact exists with respect to the applicability of the commercial loan procedures to transactions involving letters of credit. As a matter of law, we cannot hold that, because Farmigoni failed to follow the commercial loan procedures, he lacked authority to issue the letter of credit.[2]

**2.** Farmigoni relies on minutes from a 1983 or 1984 bank meeting in which, he alleges, the bank gave him the authority to issue letters of credit without any limitations. Pelican urges that Farmigoni's testimony concerning these minutes is inadmissible. We need not reach

B. *Authorization and ratification.*

Even if we held that the commercial loan procedures did apply to letters of credit, there is a genuine issue with respect to whether Noel ratified and authorized the letter of credit.

Pelican urges that the commercial loan procedures required Farmigoni to obtain authorization and ratification by the full Board. Nowhere do the commercial loan procedures define how many people must authorize and ratify a loan. In fact, it is possible to infer from Farmigoni's testimony that Noel approved the way in which Farmigoni handled the letter of credit and may have implicitly authorized and ratified the letter. Farmigoni testified about several meetings he had with Noel concerning the letter of credit to Double Development. He stated that Noel wanted to provide Lustig with the letter of credit so that she could get a loan from FNBC that would enable her to bring her Pelican loan payments up-to-date. Farmigoni testified that Noel knew ahead of time that Farmigoni was going to issue the letter of credit. Farmigoni's evidence suggests that he and Noel were working together when Farmigoni issued the letter of credit. From this evidence, one could infer that Noel's actions indicated to Farmigoni that he was properly handling the Double Development letter of credit and that he did not need further authorization and ratification. It is also possible to infer that Noel's alleged acquiescence constituted authorization and ratification.

For the above reasons, we REVERSE AND REMAND.

this issue because we hold, without relying on Farmigoni's testimony concerning the minutes,

that summary judgment was not proper.